## United States Steel Company *v.* Allegheny County, Appellant.

424

Argued October 3, 1951. Before Drew, C. J., Stern, Stearne, Jones, Bell, Ladner and Chidsey, JJ.

reargument refused March 25, 1952.

*Leonard Boreman,* Assistant County Solicitor, with him *Nathaniel K. Beck,* County Solicitor, for appellants.

*Carl E. Glock,* with him *Frank W. Ittel, Robert F. Banks* and *Reed, Smith, Shaw & McClay,* for appellee.

*P. H. McGuire, John E. Evans, Sr., Seymour H. Weiss, G. Roy Keitzer,* and *John Braden McAdoo,* for School District of City of Duquesne, et al., amicus curiae.

OPINION BY MR. JUSTICE BELL, January 7, 1952:

The solution of this appeal revolves around the narrow but important question: Did the taxpayer have a right to pay its disputed taxes *into court* under the amendatory Act of *July 15, 1935,* or was that right abolished by the amendatory Act of *July 12, 1935?*

United States Steel Company presented a petition to the Court of Common Pleas of Allegheny County, asking leave *to pay into court* the full amount of the county real estate taxes which were assessed against it for the year 1951 under and in accordance with the provisions of the Act of *July 15,* 1935, P. L. 1007, 72 P.S. Sec. 5020-518. The County Treasurer opposed the payment of the Company's taxes *into court* on the ground that *that privilege was expressly abolished* by the Act of *July 12,* 1935, P. L. 674, 72 P.S. 5020-518. The court below sustained the Company's petition and directed the Prothonotary to pay to the County Treasurer the sum of $1,000,000. and to retain the balance of taxes in question, viz., $565,944.27, pending the trial and determination of the Company's assessment appeals. From these orders of the court, the County of Allegheny appealed.

The Act of *July 15,* 1935 and the Act of *July 12, 1935, each purported to amend Section 518* of the Act

of *May 22, 1933,* P. L. 853, 72 P.S. 5020-518, known as The General County Assessment Law. These amendatory Acts are long and it will suffice to epitomize them instead of quoting them at length.

*Section 518* of The General County Assessment Law of *May 22, 1933,* supra, reads: "Section 518. Appeal to Court from Assessments; Collection Pending Appeal; *Payment Into Court\*.*" The section first provided that any owner of real estate who felt aggrieved by the assessment or valuation of his real estate might appeal to the Court of Common Pleas. The section then contained a proviso that the appeal should not prevent the collection of the taxes complained of. The section also contained another proviso, which is the only one relevent in this case, "And provided further, That the appellant may pay the amount of the tax alleged to be due by reason of the assessment appealed from *into the court* to which such appeal is taken, whereupon said court shall allocate and pay over to the proper authorities such amount of said tax as shall appear to said court to be reasonably free from dispute, and the remainder of the amount paid in shall be held by the court pending the final disposition of the appeal."

The Act of *July 12, 1935,* supra, was: "An Act to amend section five hundred and eighteen of the act, approved the twenty-second day of May, one thousand nine hundred and thirty-three . . . *by abolishing the payment of taxes into court* on appeals from assessments." Section 1 of said Act then *abolished* the privilege of paying taxes into court *by inserting in brackets* all provisions relating to such payments. During the course of the Act through the legislature, several new provisions were *added*—providing for the payment of taxes under protest, and the segregation of twenty-five per cent thereof pending the determination of

---

\* Italics throughout, ours.

assessment appeals; and providing any amount found to be due to the taxpayer as a refund should be a legal set-off or credit against future taxes.

The Act of *July 15*, 1935, supra, was *"An Act to amend section five hundred eighteen of the act, approved* the twenty-second day of May, *one thousand nine hundred and thirty-three* . . ., entitled 'An act relating to taxation; designating the subjects, property and persons subject to and exempt from taxation for all local purposes; providing for and regulating the assessment and valuation of persons, property and subjects of taxation for county purposes, and for the use of those municipal and quasi-municipal corporations which levy their taxes on county assessments and valuations; amending, revising and consolidating the law relating thereto; and repealing existing laws,' regulating the refunding of taxes where appeals are finally disposed of." The Act of *July 15*, 1935, thereupon *restated, republished and re-enacted the title and the original Section 518* of the Act of May 22, 1933 *verbatim, including the heading "Payment into Court", and all the provisions relating to payment into court* and *added* a provision that upon final disposition of the appeal the amount found to be due to the taxpayer as a refund should be a legal set-off or credit against any future taxes.

If the Act of July 12th stood alone, it is clear as crystal that the *taxpayer could not pay his taxes into court* on appeals from assessment—*that privilege was expressly abolished*. If the Act of July 15th stood alone, it is clear as crystal that the *taxpayer could pay his taxes into court* on appeals from assessments, *since that Act expressly so provided* and also by its terms re-enacted and republished verbatim the original Section 518 of the Act of 1933 which expressly and specifically authorized a taxpayer to pay his taxes into court. It is obvious therefore that *on this point*, which

is the sole point in issue, *the two Acts are absolutely irreconcilable.*

Before discussing the decisions which rule this case in favor of the appellee, it may be helpful to point out that the confusion permeating appellant's argument completely disappears if it is realized at the outset that: (1) *This is not a case of express repeal,* nor is it an attempt, by Act of *July 15,* to expressly repeal, *the Act of July 12;* (2) This is not a case where the Act of July 12 and the Act of July 15 can both stand and be construed together, the latter "duplicating" one of the four minor provisions of the former; (3) *This is a case where two Acts which make no reference to each other are,* on the sole point of issue, *absolutely conflicting and irreconcilable.* In such event the law is clear, as will hereinafter appear, that *the last Act prevails* and the earlier Act is (to the extent of the repugnancy) repealed by necessary implication.

It is clear that the Act of *July 12* and the Act of *July 15,* 1935 *are on the point at issue in this case absolutely irreconcilable,* viz.: The Act of July 12 *expressly abolishes* payment of disputed taxes *into court;* while the Act of July 15 *expressly authorizes* payment of disputed taxes into court. On this point the two Acts, we repeat, are inconsistent, conflicting and clearly irreconcilable. The narrow question is therefore presented: Which Act prevails? The Act of *July 12,* 1935, was originally known as *House Bill* No. 926. It was introduced in the House of Representatives on February 18, 1935. The Act of *July 15,* 1935, was originally known as *Senate Bill* No. 1290. It was introduced in Senate May 8, 1935. *House Bill* No. 926 was passed by the legislature on *June 20, 1935; Senate Bill* No. 1290 was passed by the legislature on *June 21, 1935.* The legislature adjourned on *June 21, 1935.* The Governor of Pennsylvania signed *House Bill* No. 926 on

*July 12, 1935,* and *Senate Bill* No. 1290 on *July 15, 1935.*

It is impossible to tell (1) whether the legislature, in the excitement and confusion which sometimes prevails in the last few days of a legislative session, did not realize that the two Acts were, on the point at issue in this case, conflicting and irreconcilable, or whether they wished to give the Governor of Pennsylvania the opportunity to decide which Act to approve; or (2) whether the Governor signed the Acts without realizing they were conflicting. In any event, it is obvious that someone blundered, leaving the taxpayers and the County Tax Collectors in a statutory morass.

Statutes are to be construed whenever reasonably possible *to effectuate the intention of the legislature*: *Commonwealth v. Provident Trust Co.,* 287 Pa. 251, 134 A. 377; *Pittsburgh Milk Co. v. Pittsburgh,* 360 Pa. 360, 62 A. 2d 49; *Com. ex rel. Kelley v. Clark,* 327 Pa. 181, 193 A. 634; *Barber's Estate,* 304 Pa. 235, 155 A. 565; *Vonot v. Hudson Coal Co.,* 285 Pa. 385, 132 A. 347; and *the question of repeal is a question of legislative intent*: *Pittsburgh Public Park Authority Petition,* 366 Pa. 10, 15, 76 A. 2d 620; *Com ex rel. v. Brown,* 210 Pa. 29, 36, 59 A. 479; *Commonwealth v. Provident Trust* Pa. 10, 15, 76 A. 2d 620; *Com. ex rel. v. Brown,* 210 Pa. 146, 47 A. 2d 229; *Pipa v. Kemberling,* 126 Pa. Superior Ct. 289, 191 A. 373.

*Whenever two amendments to an act are passed by the same legislature, they must be construed together if reasonably possible, and each must be sustained unless one expressly repeals the other, or unless they are so inconsistent or conflicting in whole or in part as to be irreconcilable, in which event the latest in date of final enactment prevails, and operates, to the extent of the repugnancy, as a repeal of the earlier amendment.* Compare the following authorities which in principle rule this case: *Com. ex rel. v. Taylor,* 159 Pa. 451,

28 A. 348; *Metcalf's Estate,* 319 Pa. 28, 179 A. 587; *Newton Estate,* 354 Pa. 146, 47 A. 2d 229; *Com. ex rel. v. Matthews,* 303 Pa. 163, 154 A. 359; *Bradley Election Case,* 352 Pa. 63, 42 A. 2d 155; Article V, §75, Statutory Construction Act, May 28, 1937, P. L. 1019, 46 P.S. 575.

In *Com. ex rel. v. Taylor,* 159 Pa., supra, the questions involved and the principles established are thus stated by Justice (later Chief Justice) MITCHELL (pages 455, 456, 457) : "The confusion in reading the statutes upon the subject of the election of school directors in the wards of boroughs, arises mainly from the fact that the 4th section of the act of May 14, *1874,* is re-enacted and extended by the act of Feb. 16, *1883, without reference to its previous repeal by the act of May 10, 1878. . . .*

"The act of May 14, *1874,* P. L. 160, by its 4th section directed 'the election of an equal number of councilmen and school directors in each of the wards,' etc. This contemplated a separate election by each ward. . . . The act, [of *1878*] though entitled a supplement to the act of 1874, contained no express repeal of any part of it, but only the general provision that so much as was inconsistent with its own provisions should be repealed—*a consequence which would have followed without expression. It did repeal the 4th section of the act of 1874 by virtue of the repugnancy between the system which it prescribed, and that prescribed by the prior act. . . .*

"The act of February 16, *1883,* P. L. 5, is a further supplement to the act of *1874. . . .* Constitutionally therefore it may contain anything that is germane to the subject of that act: Millvale v. R. W. Co., 131 Pa. 1; Phila. v. R. W. Co., 142 Pa 484. . . . *The act then in express words amends section 4 of the act of 1874, reciting it as originally enacted without any reference to its repeal by the act of 1878.* This however does not

in anywise affect the validity or the force of the new
enactment. . . . The act does not contain any express
repeal of prior acts, nor, as already said, any notice
of the effect of the act of 1878 upon the section which
it re-enacts. But the result is the same as if it did so.
It is a clear and unqualified expression of the legisla-
tive purpose to establish a system of ward representa-
tion, and necessarily supersedes all previous systems.
*It repeals so much of the act of 1878* as provides for
the election of school directors by a joint vote in the
wards, *in the same way and for the same reason that
the act of 1878 repealed section 4 of the act of 1874,
because the two systems are irreconcilable and there-
fore the latest must prevail.* There is no difficulty or
doubt about this result, or the validity of the statute
by which it is produced. The act of 1883 is the exist-
ing law on the subject, and so far as any prior acts
conflict with it they must give way."

Except for the immaterial fact that the July 12 and
July 15 Acts are amendatory Acts which were passed
in the same legislative session, this case is on all fours
with and in principle governs the present appeal.

Another case in point is *Metcalf's Estate,* 319 Pa.,
supra, where the court allowed the claim of the county
(for maintenance of the decedent) under the Act of
*1834* which was *reenacted verbatim* by Section 13(a)
of the Fiduciaries Act of *1917, prior to a similar claim*
(for maintenance) by the Commonwealth under the
Act of *1915.* The Court held that *the intermediate Act
of June 1, 1915,* which provided that claims for main-
tenance against the estate of any person should be *pro
rated* between the county and the Commonwealth *was
impliedly repealed* by the *later Act of 1917 which re-
enacted the Act of 1834,* and, speaking through Chief
Justice FRAZER, said (page 32) : "Appellant's argu-
ment based on the rule of law that, 'In so far as a later
law is merely a reenactment of an earlier one, it will

not repeal an intermediate act which qualifies or limits the first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first' (59 C. J. 926, section 528f), ignores the exception to the rule that, *where the reenacting act and the intermediate act are wholly inconsistent with each other and cannot stand together, the intermediate act will be regarded as repealed.'*"

In *Newton Estate*, 354 Pa., supra, a similar question was similarly decided by this Court. This Court held that §13(a) of the Fiduciaries Act of 1917, which provided that debts due the Commonwealth should be paid last, was *impliedly partially repealed* by the Act of September 29, 1938 (as reenacted and amended by the Act of May 19, 1943), which provided for a pro rata distribution of a decedent's funds for maintenance at a state hospital. The Court reached this conclusion notwithstanding the fact (a) that the later law contained no express repeal of the earlier Act, and (b) that repeals by implication are not favored in the law, and (c) that §9 of the Act of 1938, which was reenacted without change in the Act of 1943, specifically set forth acts and parts of acts which it repealed and did not include therein §13(a) of the Fiduciaries Act of 1917. The Court, speaking through Justice ALLEN M. STEARNE; said (page 149) : " 'An implied repeal is one which takes place when a new law contains provisions which are contrary to, but do not expressly repeal, those of a former law': Kingston Borough v. Kalanosky et al., 155 Pa. Superior Ct. 424, 427, 38 A. 2d 393. . . . 'an intent to repeal inconsistent provisions of an earlier act may be inferred from the fact that provisions of the two acts are so repugnant and irreconcilable as to render it impossible for both to stand . . .': Commonwealth ex rel. v. Matthews et al., 303 Pa. 163, 171, 154 A. 359. . . . There is an implied

partial repeal of the Fiduciaries Act by Section 9 of the 1938 Act."

Another case decisive in principle of the present case is *Bradley Election Case,* 352 Pa. 63. The question involved the time limitation with respect to the military vote and the final result of both the civilian and military votes. The Court held that the Election Code of May 5, 1944 did not impliedly repeal Section 4 of the Amendment of August 1, 1941, but did impliedly repeal Section 302 (with respect to military ballots), and speaking through Justice ALLEN M. STEARNE, said (page 69) : " *'If two acts which cover the same subject matter are repugnant in any of their provisions, the latter operates to the extent of the repugnancy as a repeal of the former; and it is not necessary that the latter act contain a provision expressly repealing the prior act or parts thereof'* : Commonwealth v. Gross, 145 Pa. Superior Ct. 92, 21 A. 2d 238."

These decisions which in principle, logic, and common sense apply equally as well to amendatory acts as to original acts, are directly applicable to and rule the present case. Moreover, §75 of Article V of the Statutory Construction Act of May 28, 1937, supra, clearly covers and governs the existing situation and likewise *directly rules this case.* It provides: "Section 75. *Two or More Amendments to Same Provision, One Overlooking the Other. Whenever two* or more *amendments to the same provision of a law are enacted at the same* or different *sessions, one amendment overlooking and making no reference to the other or others,* the amendments shall be construed together, if possible, and effect be given to each. *If the amendments be irreconcilable,* the latest in date of final enactment shall prevail from the time it becomes effective."

It may not be amiss to further note that this Court has twice within the last few years recognized the right of the taxpayer *to pay into court* the amount of taxes

which are in dispute: *Homestead Boro. v. Defense Plant Corp.*, 356 Pa. 500, 52 A. 2d 581; *Carnegie-Illinois Steel Corp. v. Duquesne*, 362 Pa. 576, 67 A. 2d 739. In *Homestead Boro v. Defense Plant Corp.*, 356 Pa., supra, a lien for taxes was filed against the land of the defendant. Complaining taxpayer tendered to the Borough that part of the tax which he admitted, and denied any liability for interest and penalties on the amount tendered. This Court held the taxpayer was liable for interest and penalties on the entire amount of the tax, since he had not tendered the entire tax. Justice JONES, in delivering the Opinion of the Court, said (page 510): "A complaining taxpayer may pay the entire tax to the collector and obtain a refund for so much as is later ascertained to have been excessive, upon final determination of his appeal, *or he may pay the entire amount of the tax into court* where it will be segregated according to the provisions of the statute and the taxpayer's rights thus safeguarded, while the extent of the tax liability is being finally determined."

In *Carnegie-Illinois Steel Corp. v. Duquesne*, 362 Pa., supra, Judge MONTGOMERY, on whose opinion the case was affirmed by this Court, quoted with approval the aforesaid portion of Justice JONES' Opinion in *Homestead Boro. v. Defense Plant Corp.*

While the above quoted portions of the Opinion in *Homestead Boro. v. Defense Plant Corp.*, and in *Carnegie-Illinois Steel Corp. v. Duquesne*, supra, were undoubtedly dicta, the fact remains that this Court as recently as 1947 and 1949 asserted the right of a taxpayer to pay his disputed taxes into court. These dicta, while not controlling, are undoubtedly entitled to weight in a close or doubtful case, especially as the law was not thereafter changed during two succeeding sessions of the legislature: Cf. *Salvation Army Case*, 349 Pa. 105, 110, 36 A. 2d 479.

We shall discuss and dispose of some of the more important arguments of the appellant. Probably their most important contention is that the amendment of *July 15, 1935,* which restates verbatim and republishes and reenacts §518 of the Act of May 22, *1933,* and then adds an additional provision thereto, merely restated and republished the original §518 *for the sole purpose of complying with Article III,* Section 6 of the Pennsylvania Constitution, which provides: "No law shall be *revived, amended,* or the provisions thereof extended or conferred, by reference to its title only, *but so much thereof as is revived, amended,* extended or conferred shall be re-enacted and published at length." We disagree with appellant's ingenious but specious interpretation. We are convinced that the *original Section 518 was restated verbatim* in accordance with the requirements of Article III, §6 of the Constitution *for the purpose and with the legislative intent to re-enact the original section with a new provision added.* Appellant (in one part of its contradictory argument) construes, restricts, and *limits the amendment of July 15 to the new provision,* notwithstanding the fact that the language which appellant seeks to ignore was neither expressly repealed nor bracketed, but was expressly restated and clearly and expressly set forth at length therein, thus clearly demonstrating the Legislature's intent that the Act of July 15 should be and include all the provisions therein set forth.

If the Legislature had intended the amendment of July 15 not to re-enact the original Section 518 as it expressly did, but to refer to and include only the new provision, it could have accomplished this result *only by expressly repealing or abolishing the original provisions of Section 518* of the Act of 1933 relating to payment of taxes into court *or it could have reached the same result by deleting said provisions by brackets.*

If, on the other hand, the Legislature wished and intended not to abrogate or repeal, but to *re-enact* Section 518 of the Act of May 22, 1933, and add a provision thereto, *how else could they have done so except by the exact method here employed,* viz.: *restating,* repeating and republishing *the section* (with the provision added), *without any brackets and without any express words of repeal?* No answer has been suggested or found to this question except the indirect inapposite answer that the Legislature could have expressly amended or repealed House Bill No. 926, the Act of *July 12,* 1935. This is obviously no answer at all. Searching for the legislative intent, it is clear that the Legislature made no attempt and had no intent, by Senate Bill No. 1290, to *expressly amend or expressly repeal House Bill No. 926,* but on the contrary intended to and did specifically amend Section 518 of the Act of May 22, 1933, which, incidentally, was the existing law and the only existing law at the time the Legislature adjourned.

Our construction is fortified, if fortification be needed, by Article V, §71 of the Statutory Construction Act of May 28, 1937, supra, which reads as follows: "The Secretary of the Commonwealth shall, in printing *amendatory* laws, cause to be printed the section or part of the law *only as re-enacted.* In the section or part of the law re-enacted, the secretary shall cause to be *printed between brackets,* the words, phrases, or provisions of the *existing law,* if any, which have been stricken out or *eliminated* by the adoption of the amendment, and he shall cause to be printed in italics all new words, phrases or provisions, if any, which have been inserted into or added to the law by the passage of such amendment."

Equally specious and fallacious is appellant's contention that the Act of July 15, 1935 is unconstitu-

tional, null and void because the Act of July 12, 1935 was on July 15th the existing law and the Act of July 15th did not expressly repeal it or by its terms amend it or bracket it or refer to it in any way whatsoever. This argument is illustrative of the confusion which permeates appellant's argument. This was not a case of an attempted express repeal of the Act of *July 12;* it is a case of repeal by implication because of the utter repugnancy between the two Acts. Appellant forgets that an earlier law may be repealed by a later law, either expressly or, *where repugnancy exists, by necessary implication,* and in the latter event *no express repeal or brackets or reference to the earlier law is necessary.*

Appellant also placed great reliance upon *Commonwealth v. Provident Trust Co.,* 287 Pa. 251, 134 A. 377, and *Hiram Walker & Sons, Inc. v. Wagner,* 358 Pa. 180, 56 A. 2d 107. These cases are clearly distinguishable. *Commonwealth v. Provident Trust Co.,* 287 Pa., supra, points out that the controlling factor is the intent of the legislature and that the presumption against an implied repeal is especially strong where both Acts were passed by the same legislature. This is undoubtedly the law. The crux of that opinion so far as this case is concerned is: " ' "Nor does a later law, which is merely a reenactment of a former, repeal an intermediate act *which qualifies and limits the first one,* but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first;" ' ". This principle of law has been stated with approval in our later, as well as in our earlier cases, but it is inapplicable to the present case because *it applies only* when the intermediate act qualifies and limits the earlier act and *not when the intermediate act is repugnant to and irreconcilable with the earlier act which has been re-enacted.*

Reliance is also placed on *Mansel v. Nicely,* 175 Pa. 367, 34 A. 793. The distinction between that case and the present case is instantly apparent from the Court's opinion on page 376-377: "The second act does not repeal any part of the first, *but supplies something for which it had not provided. . . . It supplied an omission in the first act".* The *July 15th* Act does not supply something for which the *July 12th* Act had not provided, nor does it, under any theory adduced in this case, supply an omission in the Act of July 12th; and hence, the case is clearly inapplicable.

In *Hiram Walker & Sons, Inc. v. Wagner,* 358 Pa., supra, the taxpayer paid a floor tax under the Act of November 22, 1933, which was subsequently declared unconstitutional. By an Act of August 5, *1941,* the legislature amended §503 (a) of the Fiscal Code of April 9, 1929, so as to permit a refund of taxes paid under the unconstitutional liquor floor tax law, upon applications *filed within two years* following the effective date of the amendatory act. The taxpayer, more than two years after the effective date of the amendatory act, filed an application for a refund on the ground that the amendatory Act of 1941 was amended and its terms republished by the Act of May 7, *1943.* The only change wrought by the Act of *1943* was a substitution of the words "final judgment of a court of competent jurisdiction" for the words "the court of final jurisdiction" in the Act of 1941. The Court held that the 1943 amendment did not alter or deal with the period of limitations on claims for tax refunds set forth in the Act of 1941, and consequently that *those* "'portions of the law which were not altered by the amendment* [of 1943] *shall be construed as effective from the time of their original enactment . . .'* "; and therefore the taxpayer's petition for refund was filed too late. That case clearly dealt with the question of

when unaltered portions of an act and the amending portions of an act *became effective,* and is clearly distinguishable from the present case, where the issue involves an irreconcilable conflict between the Act of *July 12* and the Act of *July 15,* 1935.

We have considered all of the arguments made and all of the authorities cited by appellants but deem further discussion unnecessary.

Order affirmed.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

The majority opinion assumes that the amendatory Act of July 15, 1935, P. L. 1007, re-enacted the right to pay into court taxes on an appealed assessment under Section 518 of the Act of 1933, P. L. 853, which right the Act of July 12, 1935, P. L. 674, expressly abolished. With that assumption as a premise, the majority builds up a case of implied repeal for which requisite repugnance between *independent or supplemental non-contemporaneous enactments is not present.* This is a case of two amendments of the same section of prior law both enacted at the same session of the legislature. The majority opinion fails to give effect to the distinction which was clearly recognized in *Commonwealth. ex rel. v. Taylor et al.,* 159 Pa. 451, 453, 456, 28 A. 348, between amendatory Acts and supplemental or original Acts. The finding of implied repeal in the *Taylor* case depended upon the circumstance that the Acts there involved were supplements to and not amendments of prior law. The *Taylor* case in reality supports the proposition that an amendatory Act does not operate as an independent re-enactment of the unchanged portions of the prior law which it cites for amendment. The majority opinion quotes copiously from the *Taylor* case but casts aside the im-

portant distinction above noted with the comment that "Except for the immaterial fact that the July 12 and July 15 Acts are amendatory Acts which were passed in the same legislative session, this case is on all fours with and in principle governs the present appeal."

The recitation of prior law in an amendatory Act is pursuant to the constitutional requirement in Article III, Section 6, of the Pennsylvania Constitution which provides that "No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length." The unchanged portion of the published prior law (cited for amendment) does not constitute a new and independent enactment of such portion. And, of course, it cannot be published other than as it exists at the time of the amendment's passage by the legislature without regard for any other amendatory changes being concurrently made in the prior law.

The inefficacy of the publication of the whole of a section (cited for amendment) as a re-enactment of portions of the old section, as unamended, is well illustrated by our decision in *Hiram Walker & Sons, Inc. v. Wagner*, 358 Pa. 180, 56 A. 2d 107, which involved a claim for refund of taxes paid under the Liquor Floor Tax Law of 1933 later declared unconstitutional by this court in *Commonwealth ex rel. v. A. Overholt & Co., Inc.*, 331 Pa. 182, 200 A. 849. As some taxes of such nature had been paid *more than five years* prior to the decision declaring the Tax Act unconstitutional, claims for refunds therefor could not be made under then-existing law, viz., Section 503 (a) (4) of the Fiscal Code of 1929 as amended. In that situation, Section 503 (a) (4) of the Fiscal Code was amended by the Act of August 5, 1941, which provided that the

limitation of five years on a claim for refund of taxes paid under a void statute should not apply to claims for refund of the liquor floor tax ". . . if application for such refunds shall be made within two years after the effective date of this amendment" which date by general law was September 1, 1941. Within the two-year limitation period thus prescribed, the amendment of August 5, 1941, was further amended by the Act of May 7, 1943, which substituted the words "final judgment of a court of competent jurisdiction" for the words "the court of final jurisdiction". Without further change, the entire section, including the two-year limitation, was, perforce, published in its original form. The Walker Company filed its claim for refund on June 5, 1944, two years and nine months after the effective date of the earlier (i.e., 1941) amendment. The company claimed that the 1943 amendment, by its publication of the 1941 amendment, had thus re-enacted that amendment including the two-year extension period for claims of refund so as to make the period of limitation run from the effective date of the 1943 amendment. We flatly rejected the contention, saying at p. 182 that "The only change wrought in the [amendatory] Act of 1941 by the amendment of 1943 was the substitution of the words 'final judgment of a court of competent jurisdiction' for the words 'the court of final jurisdiction' . . . . In order to effect that change constitutionally, it was necessary that the entire section to which the partial amendment was made be set forth in full in the 1943 amendment: Constitution of Pennsylvania, Art. III, Sec. 6; cf. Commonwealth ex rel. v. Cooper, 277 Pa. 554, 559-560, 121 A. 502, and cases there cited; Appeal of C. N. Barrett, 116 Pa. 486, 490, 10 A. 36; Commonwealth v. Pennsylvania Railroad Company, 88 Pa. Superior Ct. 321, 326." In short, the amendment did not operate to re-enact the portion of the cited prior law which it did not actually

change. Consequently, the two-year period of limitation did not run from the effective date of the subsequent amendment. Likewise, here, the amendment of July 15th did no more than insert in Section 518, either as originally enacted or as otherwise amended, a provision for the allowance of a credit or setoff against future taxes in case of an overpayment.

The circumstances under which the two amendatory Acts relating to the same general subject matter were passed at the same session of the legislature afford a legal presumption that the legislature did not intend the one Act to repeal the other. This rule was well stated in *Mansel v. Nicely,* 175 Pa. 367, 376-377, 34 A. 793, where Mr. Justice FELL, speaking for this court, said,—"For the purposes of construction, as these acts relate to kindred subjects and were passed within a week of each other, the entire scope of the legislation should be considered. The second act does not repeal any part of the first, but supplies something for which it had not provided. The first act took away the right of allowance for all individual expenses; the second conferred the right to traveling expenses. It supplied an omission in the first act. *An implied repeal is a question of intention, and the presumption against the intention to repeal is strengthened by the fact that both acts were under consideration by the legislature at the same time"* (Emphasis supplied). The foregoing was quoted with approval in *Foresman v. Gregg Township,* 297 Pa. 369, 374, 147 A. 64. And, the rule has been repeatedly followed: see *Commonwealth v. Provident Trust Co.,* 287 Pa. 251, 259, 134 A. 377; *Commonwealth v. City of Pottsville,* 246 Pa. 468, 471, 92 A. 639; *Duffy v. Cooke,* 239 Pa. 427, 433, 86 A. 1076; and *Commonwealth v. Moore,* 49 Pa. Superior Ct. 321, 322. The *Mansel* case is directly in point on the question of the effect of the amendments of July 12th and July 15th on Section 518 of the Act of 1933. The majority seeks

to differentiate the *Mansel* case on the ground that the second amendment supplied something which the first amendment did not contain. That is a distinction without a difference. The rule of the *Mansel* case is *a fortiori* presently pertinent. Here, the July 15th amendment merely supplied something that the July 12th amendment already contained. Nor was it intended to do more according to its title.

In no view can it properly be said that the Act of July 15, 1935, revived and re-enacted Section 518 of the Act of 1933, as it originally existed, and that it thereby impliedly repealed the Act of July 12th.

The circumstances under which the question here involved is raised are as follows. Section 518 of the Act of 1933, as it originally existed, dealt with the right of appeal to a court of common pleas from a property assessment, the collection of taxes pending an appeal from an assessment and the right of the property owner to pay the taxes into court. The Section was headed: "Section 518. Appeal to Court from Assessments; Collection Pending Appeal; Payment Into Court." At the 1935 session of the legislature, Section 518 was amended twice, once by the Act of July 12, 1935, P. L. 674, which had originated in the House, and once by the Act of July 15, 1935, P. L. 1007, which had originated in the Senate. The two amendments were enacted almost simultaneously, the Act of July 12th having passed both branches of the legislature on June 20, 1935, upon concurrence by the House in the Senate amendments to the House Bill, while the Act of July 15th passed both branches on June 21, 1935, upon final passage by the House of the Senate Bill. In the Senate, the House Bill, which became the Act of July 12th, was passed finally on June 19th, whereas the Senate's own Bill, which became the Act of July 15th, had been passed finally the day before,

June 18th. The legislature adjourned sine die on June 21, 1935.

The changes worked by the amendment of July 12, 1935 (House Bill), in Section 518 of the Act of 1933 were: (1) the abolition of the right to pay taxes into court upon appeals from assessments, (2) the incorporation of a provision for the payment of taxes under protest and the segregation of a portion thereof pending determination of an assessment appeal, (3) a provision empowering a court of common pleas to authorize the use by the taxing district in certain circumstances of the segregated portion of taxes paid under protest, (4) a provision for the allowance of a credit or setoff against future taxes in case of an overpayment as determined by a finding of overassessment, and (5) a provision authorizing the payment to a taxing district of the full amount of taxes, subject to the foregoing segregation provision, where such taxes had theretofore been paid into court. As introduced in the House and as there originally passed, the July 12th amendment had contained only provision (1) supra, namely, the abolition of the right to pay taxes into court. The other amendatory provisions of the Act of July 12th were added by Senate amendments to the House Bill in which amendments the House concurred on June 20th, as above stated, thereby completing final passage of the House Bill by both branches of the legislature.

While the House Bill was there pending, the Bill which later became the Act of July 15th was introduced in the Senate. That Bill contained but one amendment of Section 518, namely, a provision for the allowance of a credit or setoff against future taxes in case of an overpayment as determined by a finding of overassessment, as already appears. The same provision was one of the amendatory provisions, (4) supra;

which the Senate made to the House Bill when that measure was in the Senate. Notwithstanding that the Senate passed the House Bill, which it had amended as above stated, it also passed and sent to the House the Senate Bill with its single duplicative change in Section 518, which Bill the House then passed.

Thus, both branches of the legislature passed both Bills and sent them to the Governor for approval. The reason for so doing is obvious. The session was near an end. As already stated, the legislature adjourned sine die on June 21st. The Governor had thirty days from adjournment within which to act on the two amendatory Acts: Article IV, Section 15, of the Constitution of Pennsylvania. If he should disapprove the House Bill, all of its amendatory provisions would thereby fall, whereas the credit allowance provision which the Senate Bill had independently initiated could still become effective if the Governor should approve that Bill. On the other hand, if the Governor approved the House Bill, as *he actually did on July 12, 1935,* there would then be no point in signing the Senate Bill; its amendment would be merely a duplication of the similar provision already contained in the approved House Bill. The Attorney General's report to the Governor on the two Bills should have pointed out as much. Whether it did or not does not appear. In any event, the Governor, having signed the House Bill on July 12, 1935, also signed the Senate Bill on July 15th.

The Act of July 15, 1935, did not purport to revive or re-enact Section 518 of the Act of 1933 as it originally existed. All that that amendment was intended to do, according to its title, was to amend Section 518 of the General County Assessment Law of 1933 by "regulating the refunding of taxes where appeals are finally disposed of." To ascribe anything more to the Act of July 15th than what its title specified would

operate to render the Act unconstitutional: see Article III, Section 3, of the Pennsylvania Constitution. By contrast, the Act of July 12, 1935 (House Bill), which amended Section 518 in the particulars hereinabove specified, correctly had for its title,—"An Act to amend section five hundred and eighteen" of the General County Assessment Law of 1933 "by abolishing the payment of taxes into court on appeals from assessments; providing for the payment of taxes under protest; and restricting the expenditure of such tax moneys; regulating the refunding of taxes after the disposition of appeals; conferring powers upon courts of common pleas; and providing for the disposition of funds heretofore paid into court." And, agreeably to the Act of March 16, 1923, P. L. 11, infra, the matter to be eliminated by the July 12th amendment, namely, "Payment Into Court", in the heading of Section 518 and all reference to payment into court in the body of the Section were enclosed in brackets and the new provisions were shown in italics.

Under the Act of March 16, 1923, P. L. 11 (later re-enacted as Section 71 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §§501-602), passed in furtherance of the above-quoted constitutional provision, it is necessary that a section or sections of an Act to be amended be recited in full with the proposed amendatory changes appropriately indicated by brackets enclosing portions to be eliminated and italics designating additions. Since the only change indicated by the Senate Bill (Act of July 15th) was the provision relating to a credit or setoff for an overpayment, the new matter was naturally shown in italics. Obviously, the phrase "Payment Into Court" in the heading of Section 518 and the reference to payment of taxes into court in the body of the Section could neither be enclosed in brackets nor eliminated

in the Senate Bill's publication of the Section for amendment as *that* Bill neither purported to so amend Section 518 nor had the amendment in such regard (which the House Bill was contemporaneously effecting) become final as yet.

But, even if a substantial question of implied repeal could possibly be said to be present in this case, it would have to be resolved against the taxpayer's contention because of the evident legislative intent. It is hornbook that an implied repeal is no less a matter of intention than is an express repeal. Brief reference to facts already stated will at once disclose that neither branch of the legislature could have *in fact* intended that one of the Acts should repeal the other. For instance, the Senate Bill which became the Act of July 15th and which the majority says impliedly repealed the House Bill (Act of July 12th) was passed finally by the Senate on June 18th, a day before that body passed the House Bill (June 19th) which became the Act of July 12th. In other words, the alleged implied repealer was passed by the Senate a day before the Bill which it is said to have repealed. How can a branch of the legislature possibly be thought to have intended to repeal one day an Act which it did not pass until the succeeding day?

The intent to impliedly repeal the Act of July 12th which the majority imputes to the legislature is made to depend upon the relative dates on which the Governor signed the two Acts rather than upon anything the legislature indicated. Obviously, the legislature could not have known which of the two Bills, if either, the Governor would sign or the order of his signing after the legislature had adjourned. The anomaly of deriving *legislative intent* from the Governor's choice of times for the signing of the two Bills is the more manifest when it is recognized that had the Governor

signed the Senate Bill before he signed the House Bill or had he signed both Bills on the same day, the suggested implied repeal could not possibly have been advanced. The majority opinion is notably silent on the strange fortuity upon which it bases the argument of implied repeal.

The want of any present pertinency in the relativity of the dates upon which the Governor signed the two amendatory Acts is further evident. It is beyond dispute that by the Act of July 12th the right to pay taxes into court was definitely and constitutionally eliminated from Section 518 of the Act of 1933. The Act of July 15th could not, therefore, as an amendment, have operated to reinsert in Section 518 the portion that had been eliminated by the Act of July 12th. Nowhere did the legislature evidence that it intended so to do. Section 77 of the Statutory Construction Act of 1937 is peculiarly applicable, viz., "Provisions of a law no longer effective shall not be construed as being revived by re-enactment in an amendatory law, unless it shall clearly appear that the Legislature intended to revive such provisions": see *Commonwealth v. Provident Trust Co.*, supra; cf. also *Indiana County Petition*, 360 Pa. 244, 248, 62 A. 2d 3. Furthermore, as the right to pay taxes into court was admittedly eliminated from Section 518 of the Act of 1933 upon the Governor's approval of the Act of July 12th, the only way that that provision could thenceforth be validly and constitutionally reinserted in Section 518 would be by an amendment reciting Section 518 with "Payment Into Court" shown in italics and the right to pay taxes into court in the body of the Section likewise italicized: see Article III, Section 6, of the State Constitution and the Act of March 16, 1923, P. L. 11, cit. supra. If further authority be needed in support of this view, it is supplied by Section 74 of the Stat-

utory Construction Act which provides that "Whenever a law has been more than once amended, the latest amendment shall be read into the original law as previously amended and not into such law as originally enacted." The reasoning in *Commonwealth v. Provident Trust Co.*, supra, is also presently pertinent.

Finally, the legislature is not to be presumed to "intend a result that is absurd, impossible of execution or unreasonable": Statutory Construction Act of 1937, Section 52. Yet such is the character of the result which the majority's construction of the two Acts produces. Assuming, arguendo, that the Act of July 15th did impliedly repeal the Act of July 12th with respect to the right to pay taxes into court, it is undeniable that the remaining amendatory provisions of the Act of July 12th are extant and unaffected by the Act of July 15th. Those provisions are (a) the right to pay taxes to the collector of the district under protest and the segregation of a portion thereof pending determination of an assessment appeal, (b) the right of the taxing district to use with court approval, pending assessment appeals, a certain portion of the segregated taxes paid under protest, (c) the allowance of a credit or setoff against future taxes in cases of a later determined overassessment, and (d) the payment to a taxing district of the full amount of taxes, subject to the foregoing segregation provision, where such taxes had theretofore been paid into court—a clear legislative intent that the system of paying disputed taxes into court no longer should obtain. The absurdity produced by holding that the Act of July 15th reestablished a taxpayer's right to pay taxes into court is patent in the light of the foregoing provisions of the Act of July 12th and needs no comment. It is not the appellants' contentions that are either "specious" or "fallacious".

The cases relied upon by the majority are not in point. They correctly apply the principle of implied legislative repeal to circumstances to which that principle is applicable. They are not concerned with Acts *amendatory* of the same general subject matter concurrently enacted. The statement with respect to payment into court of taxes where the assessment is the subject of appeal in *Homestead Borough v. Defense Plant Corporation,* 356 Pa. 500, 510, 52 A. 2d 581, decided in 1947, to which the majority refers, is manifestly an *obiter dictum.* The right to pay taxes into court was in no wise involved in that case. Obviously, therefore, the case was not decisional on that point as was plainly recognized in *Carnegie-Illinois Steel Corp. v. Duquesne,* 362 Pa. 576, 579, 67 A. 2d 739, where we unanimously affirmed per curiam on the opinion of Judge MONTGOMERY for the Court of Common Pleas of Allegheny County. The majority goes far afield when it espouses plain obiter to bolster an unwarranted statutory construction.

I would reverse the order and dismiss the petition.

Mr. Justice CHIDSEY joins in this dissenting opinion.