## Dreisbach Estate

*Isadore Rapoport* and *Leonard Rapoport*, for accountants.

*O. J. Tallman*, for Commonwealth.

GEARHART, P. J., November 25, 1953.—George Dreisbach died testate October 20, 1952. His will, dated December 18, 1950, was duly probated. The executors and trustees, Harry F. Lester and the Allentown National Bank of Allentown, Pa., have filed a first and partial account. The Commonwealth of

Pennsylvania has filed objections to the account and the proposed schedule of distribution.

It was stipulated and agreed by all parties in interest that the only objection that the court should pass upon at this audit was objection no. 1. This complains that the accountants have failed to pay the inheritance tax upon the residuary estate, which under the terms of decedent's will was bequeathed to his trustees, they to pay the net income therefrom to the Evergreen Cemetery Association, East Mauch Chunk, Pa., for the purpose of maintaining decedent's burial plot, taking care of the monuments thereon, and providing flowers on specified days.

The gross estate amounts to $359,410.01, and after taking credit for debts and administration expenses, there is a balance for distribution of $314,503.81.

Testator made two pecuniary bequests. He gave $3,000 to the First Presbyterian Church of Mauch Chunk, Pa., and $50,000 was placed in trust, the income to be paid to Ruth J. Lester for life, and upon her death or remarriage the principal to be returned to the corpus of the estate.

Testator directed that the cemetery association was to distribute the income from the residuary estate among three funds which he established during his lifetime: (1) The Dreisbach maintenance fund, (2) the Dreisbach monument fund, and (3) the Dreisbach flower fund. He restricted the use of the income entirely to the cemetery plot deeded to himself, and in his will referred to copies of three letters which he wrote to the cemetery association concerning these funds.

In 1924 decedent paid to the association $200 for the maintenance fund, $100 for the flower fund, and $100 for the monument fund. Subsequently he augmented the flower fund, and at the time of the hearing there was a balance of $2,680 unexpended. George

E. Gassner, the cemetery official, testified that the annual cost of placing flowers on the graves is $420 and is paid entirely out of the corpus of the flower fund.

The dispute in this case centers about the inability of the register of wills, as the representative of the Commonwealth, and the accountants to agree on what is a reasonable amount to be allowed as a deduction for transfer inheritance tax purposes for the care and preservation of the family burial lot of decedent. The deduction to which the estate is entitled in ascertaining the clear value of the estate for the payment of inheritance tax is authorized under the Act of June 20, 1919, P. L. 521, art. 1, sec. 2, as amended, 72 PS §2302. It states in part:

· "In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values of such estates by the register of wills shall be the debts of the decedent, reasonable and customary funeral expenses, bequests, or devises in trust, in reasonable amounts, the entire interest or income from which is to be perpetually applied to the care and preservation of the family burial lot or lots, their enclosures and structures erected thereon, reasonable expenses for the erection of monuments or grave stones, grave and lot markers and the expenses of the administration. . . ."

The accountants take the position that there is no further tax due the Commonwealth on the residuary estate by virtue of the Act of March 5, 1903, P. L. 12, sec. 1, 9 PS §6, which exempts from collateral inheritance tax bequests and devises in trust for the purpose of applying the entire interest and income thereof to the care and preservation of the family burial lot or lots of a donor, in perpetual good order and repair. The Act of 1903 has not been specifically repealed.

The Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, 72 PS §2301, with its supplements and

amendments, is the act under which the collateral and direct inheritance taxes are now assessed and collected. The act provides in section 2 that in ascertaining the clear taxable value of the estate, the only deductions allowed shall be the debts of decedent and the expenses of administration.

Section 2 of the Act of June 20, 1919, P. L. 521, was amended by the Act of July 12, 1923, P. L. 1078. This amendatory act added other deductions in ascertaining the clear taxable value of estates:

"Bequests, or devises in trusts, in reasonable amounts, the entire interest or income from which is to be perpetually applied to the care and preservation of the family burial lot or lots, their enclosures and structures erected thereon, reasonable expenses for the erection of monuments or grave stones, grave and lot markers. . . ."

This amendatory act of 1923 was reënacted without change, the last reënactment being the Act of May 27, 1943, P. L. 757, 72 PS §2302.

It is to be observed that the Act of 1903 is inconsistent with the amendatory Act of July 12, 1923. The Act of 1903 exempts from taxation sums bequeathed the income of which is to be applied to the perpetual preservation and care of family burial lots. The Act of 1923 allows as deductions "bequests, or devises in trust, *in reasonable amounts*" . . . and "reasonable expenses for the erection of monuments or grave stones, grave and lot markers. . . ."

The question has been raised as to whether the Act of 1923 repeals by implication the Act of 1903. Clearly, the two acts are inconsistent. The latter act makes no reference to the earlier act. The rule with respect to the instant situation, i.e., when two acts cover the same subject matter and are repugnant and inconsistent in their provisions, was stated in Commonwealth v. Gross, 145 Pa. Superior Ct. 92, and quoted

with approval in the Bradley Election Case, 352 Pa. 63, 69:

"If two acts which cover the same subject matter are repugnant in any of their provisions, the latter operates to the extent of the repugnancy as a repeal of the former; and it is not necessary that the latter act contain a provision expressly repealing the prior act or parts thereof."

Mr. Justice Bell, writing the opinion for the Supreme Court in United States Steel Company v. Allegheny County, 369 Pa. 423, 428, reaffirmed the rule, there stating:

"*This is a case where two Acts which make no reference to each other are*, on the sole point of issue, *absolutely conflicting and irreconcilable*. In such event the law is clear, as will hereinafter appear, that *the last Act prevails* and the earlier Act is (to the extent of the repugnancy) repealed by necessary implication."

We are of the opinion that the Act of 1923 with its reënactments as hereinbefore shown, repeals the Act of 1903. See also Ashbridge's Estate, 47 D. & C. 343; Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 66, 46 PS §566 and 46 PS §591.

We are not troubled with the question of whether this is a family burial lot. The Commonwealth concedes that.

Accordingly, it devolves upon us to determine what constitutes, under the act, a reasonable amount necessary to perpetually preserve the family burial lot, its enclosures and structures, and what is a reasonable expense for the erection of monuments or grave stones, grave and lot markers.

In Filoon Estate, 71 D. & C. 506, a case involving a question similar to the one before us, it was held that a testamentary provision as to the amount to be expended for the erection of tombstones and the perpetual care of a burial plot had no bearing upon the

amount reasonably allowed as a deduction for such expenses for inheritance tax purposes under article 1, sec. 2, of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2302. In that case the register had allowed a $3,000 deduction as a reasonable expense for the erection of monuments, markers, etc., and $2,000 as a reasonable amount, the income of which was to be applied to the perpetual care of the lot. The estate requested that $12,000 be allowed as a deduction. The total estate amounted to about $80,000. Judge Holland there decided that $3,000 was a reasonable expense for the erection of monuments, etc., and said he (p. 508) : "Certainly an elaborate monument with accompanying gravestones and grave and lot markers can be had for $3,000, regardless of the size of the estate, and such a memorial and decoration in good taste is all that is allowed by the statute as a deduction."

In Filoon Estate the executor had actually expended $26,716 for a mausoleum and monuments; this, of course, with the approval of the interested parties.

In the instant case testator had dedicated practically his entire estate to the maintenance of the burial lot. For purposes of calculating the inheritance tax, the criterion to be used in determining the deduction allowed under the act is not the amount bequeathed by testator, but what is reasonable under all the circumstances. If the test were otherwise, then in many cases, and this case illustrates the point, testator's estate would pay little or no tax. This would contravene the plain wording of the Transfer Inheritance Tax Act which states (art. 1, sec. 1, 72 PS §2301) :

"A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations. . . ."

And section 2 of the same act imposes a tax on the

clear value of the property passing and indicates the type of deductions allowed in arriving at the clear value. In short, while the law looks with favor on the erection of tombstones and the preservation of burial lots by having provided for such deductions, the legislature has just as plainly limited the deductions allowed to "bequests or devises in trust, in reasonable amounts".

In order to aid in determining what is a reasonable amount, witnesses were called to show the condition and circumstances of the family burial plot. The plot is approximately 1,600 square feet and contains nine graves. Some of the graves have monuments and others markers.

Earl Wentz, a manufacturer of tombstones, testified that the monuments and markers should be cleaned, repointed and straightened. To do this would cost $490. Thereafter, the monuments could be maintained in good condition at an annual expenditure of $225 and would last another thirty to fifty years. He testified that the gutter and curbs surrounding the plot were in a state of disrepair; that to replace them in limestone would cost $11,829 and to replace them in granite would cost $15,988. He testified that to replace the granite tombstones and markers and four Quincy posts would cost $7,956. The total cost for replacement of monuments and markers, curbs and gutter in limestone would be $19,785. If the curbs and gutter were replaced in granite, the total cost would be $23,944.

The estate also called George Gassner, treasurer of the Evergreen Cemetery Association, who testified to conversations had with decedent and letters received from him with respect to the maintenance and care of the cemetery plot. From the testimony of the witness and the will itself, it is apparent that testator was very much concerned about the care and maintenance

of the family burial plot. The witness testified that the cemetery association provides perpetual care in the way of mowing lots upon the payment of $20 per grave. This is the usual charge. Therefore, the amount necessary to provide perpetual mowing care for the lot would be $180. Assuming this amount yields three percent per annum, the cemetery would receive $5.40 to mow the lot. However, Mr. Gassner testified that to keep the plot in the condition that testator would desire would cost $8 per week for thirty-two weeks of the year, or $256 per annum. He further testified that it would cost $200 for filling around the plot, and $50 additional for seed and fertilizer, annually.

This opinion seems in conflict with the established facts. Thus, the cemetery ordinarily would charge but $5.40 per annum to mow the plot. Further, for a period of 13 years preceding testator's death, but $52.90 was spent for seed, lime, fertilizer and filling for the plot.

It is to be observed that after the expenditure of $490, the monuments and markers will be in good condition and will last for many years. To a degree, the same is true of the curbs and gutters, which can be repaired and put in good condition.

As bearing on the question of the necessity for replacing the curbs and gutter, as well as monuments and markers, the Commonwealth points out that nothing was expended on them for many years; this despite the fact that decedent had authorized his cemetery agent as early as 1924 to expend what was necessary to keep the plot in good condition.

Then there is the matter of periodically placing flowers on the various graves. To an extent, at least, this has been taken care of by testator himself, for it was testified that there is $2,680 remaining in the flower fund.

We are cognizant of the fact that what is a reason-

able deduction under all the circumstances is a matter about which honest minds may differ. Deductions allowed for tax purposes in other estates may be of some help. In Filoon Estate, 71 D. & C. 506, in an $80,000 estate, $5,000 was considered a proper deduction. In Hetrick Estate, 78 D. & C. 52, where the gross estate was $277,765.55, an amount of $9,998.12 was held to be a reasonable deduction. In Ashbridge's Estate, 47 D. & C. 343, in an estate of $330,000, a $15,000 bequest for care and preservation of the family burial plot was held to be reasonable for purposes of inheritance tax deduction.

Taking all of these factors into consideration, we believe a reasonable amount to be deducted for tax purposes should be $15,000.

It is to be constantly borne in mind that we are not now deciding what amount should be placed in trust for the maintenance of the burial plot, monuments and markers, and for placing flowers, etc., as provided in the will. That raises a different problem and will necessitate a different approach, for it involves the question of testator's right to dispose of his own property for a particular purpose. In essence, it amounts to the ultimate distribution of the estate.

Now, November 25, 1953, the Commonwealth's objection No. 1 is sustained. The accountants are directed to pay the Commonwealth of Pennsylvania the amount of transfer inheritance tax due on the residuary estate. In calculating the tax, the register will allow $15,000 as a reasonable deduction, as indicated in the body of the adjudication. The accountants will take credit for the tax paid in the final account.

Accordingly, the account is confirmed and the balance in hand is returned to the accountants for further administration.

This decree will become final unless exceptions are filed within 10 days herefrom.