## Metcalf's Estate.

Argued April 22, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*James F. McMullan,* with him *Charles J. Margiotti,* Attorney General, *John Y. Scott,* Deputy Attorney General, and *John Franklin Shields,* for appellant.

*T. B. K. Ringe,* with him *Ernest Lowengrund,* Assistant City Solicitors, and *David J. Smyth,* City Solicitor, for appellee, were not heard.

OPINION BY MR. CHIEF JUSTICE FRAZER, June 29, 1935:

The Commonwealth appeals from a decree of the Orphans' Court of Philadelphia County dismissing exceptions to an adjudication of the estate of Eliza Ann Metcalf, deceased, whereby the City of Philadelphia was awarded its claim for the maintenance and support of decedent, during her lifetime, in the Philadelphia Hospital for Mental Diseases, at Byberry, Pa., prior to a similar claim by the Commonwealth.

Decedent died June 6, 1933, intestate and unmarried, in the Philadelphia Hospital for Mental Diseases, to which she had been committed for treatment on October 31, 1919, and where she was confined from that time until her death. During the period of her illness, the Commonwealth contributed toward her support in the institution and had been reimbursed for such payments except as to $53.71 which was due the State at her death. This claim was presented by the Commonwealth at the audit of the account of the administrator of decedent's estate. The City of Philadelphia also presented its claim against the estate in the sum of $1,565 expended by it (in excess of the amount contributed by the Commonwealth) on account of the maintenance of decedent in the hospital during the period of six years immediately preceding her

death. The estate was insufficient to pay both accounts in full, the audit showing a balance for distribution of only $857.77.

There was no dispute as to the correctness of these claims, and there were no other claims against the estate. Appellant, however, contends that distribution should have been made pro rata under section 7 of the Act of June 1, 1915, P. L. 661, entitled, "An act relating to the maintenance of insane, feeble-minded, and other persons confined in the various institutions of the Commonwealth; fixing liability for their support; providing for the collection of the moneys due the Commonwealth therefor, and for proceedings relating thereto." Section 7 of the act reads: "Where there is a claim against the estate of any person maintained in any . . . institution, both on behalf of the Commonwealth and on behalf of any county . . ., and there is not sufficient in the estate to pay the claim in full, the same shall be paid pro rata to the State and the county, in the proportion of the amount of maintenance legally recoverable by each."

As the court below states in its opinion, section 7 of the Act of 1915 must be read in connection with section 6, which provides that "All claims by the Commonwealth for maintenance as herein provided in the distribution of any of the estate of any person so maintained, shall take precedence and be paid after other claims which by law are now given precedence, and before any claims of general creditors." The law at that time (section 21, Act of February 24, 1834, P. L. 76) gave preference, in the payment of a decedent's debts, first, to funeral expenses, medicine and medical attendance during the last illness of decedent, and servants' wages for one year, second, to rents, not exceeding a year, and, third, "all other debts, . . . except debts due to the Commonwealth, which shall be paid last." This had been the law since 1794 (section 14, Act of April 19, 1794, 3 Smith's Laws 143). The question arose whether the provisions of the Act of 1915, which so materially altered the order of pay-

ment of the debts of a decedent, were constitutional, inasmuch as the title to the act does not give notice of the change; but the orphans' court properly concluded it need not pass upon this question for the reason that, whether or not these sections were constitutional, as applying to the debts of decedents, they were superseded by the provision in section 13 (a) of the Fiduciaries Act of 1917, P. L. 447, which reënacted, verbatim, section 21 of the Act of 1834, and repealed "all other acts of assembly, or parts thereof, that are in any way in conflict or inconsistent with this act, or any part thereof."

Appellant's argument based on the rule of law that, "In so far as a later law is merely a reënactment of an earlier one, it will not repeal an intermediate act which qualifies or limits the first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first" (59 C. J. 926, section 528f), ignores the exception to the rule that, "where the reënacting act and the intermediate act are wholly inconsistent with each other and cannot stand together, the intermediate act will be regarded as repealed." As was said by the late Judge GEST, in O'Connor's Est., 20 D. & C. 547, 549, "section 6 of the Act of 1915 . . . is repealed by the general repealer clause of the Fiduciaries Act, as it is clearly in conflict and inconsistent with section 13 (a) of the act" and the two sections "cannot stand together."

Toner's Est., 260 Pa. 49, cited by appellant as a leading case on this subject, is rather opposed than helpful to appellant's contentions, for it held (page 57) that there was "no absolute repugnancy" between the last and the intermediate of the acts there under discussion.

The decree of the orphans' court awarding the balance for distribution to the City of Philadelphia is affirmed; costs to be paid out of the fund for distribution.