## Commonwealth v. Groller

John E. Hartzell, for plaintiff.
Geza Bolez, for defendant.

HENNINGER, J., March 3, 1941.—The Commonwealth "by and through John E. Hartzell, representative of the Department of Justice of the Commonwealth of Pennsylvania", brought this action in assumpsit to recover from defendant $2,380.02 for the amount expended by the Commonwealth from December 7, 1932, to July 31, 1940, for the support of defendant's husband, Frank Groller, a patient at Allentown State Hospital, which defendant has neglected and refused to pay after demand. The statement of claim contains no further averments of fact.

Defendant filed an affidavit of defense raising these questions of law: (1) No allegation of ability to pay; (2)

assumpsit does not lie, at least not until prior determination of ability to pay; (3) no proper allegation of Hartzell's authority to bring the action.

To take the objections in inverse order, defendant does not deny the right of an authorized representative of the Department of Justice to bring whatever action is proper. She merely questions John E. Hartzell's authority so to act and cites in support of that contention Fiscus' Estate, 26 Dist. R. 894, and Commonwealth v. Kerstetter et al., 3 D. & C. 133. These cases rule that such representatives must not only describe themselves as such but that they must make a positive averment thereof and file a certificate showing their appointment. We do not question these authorities, but deem an affidavit of defense raising questions of law an improper method of raising the question of authority. Since, however, a supplemental statement of claim will become necessary under this opinion, the representative should make a positive and unequivocal averment of his authority, which may be contested by defendant by appropriate procedure, if she so desires. In the absence of a challenge of his authority, however, we do not hold that the filing of a certificate from the Attorney General is required.

Objections 1 and 2 may be considered together. The obligation sought to be enforced in this action arises under the Act of June 1, 1915, P. L. 661, and its amendments and supplements, 71 PS §§1781 to 1788. We are not concerned with sections 1, 2, 5, 6, 7 or 8, 71 PS §§1781-82, 1785-88. Section 3 of that act, 71 PS §1783, provides in part:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person, as hereinafter provided."

Section 4 of said act, 71 PS §1784, provides that the court of common pleas of the county of the residence of

the inmate shall, upon the application of the Department of Justice, make an order for the payment of maintenance upon, inter alia, the wife of any person so maintained, the order to be in such amount ". . . as the court, in its discretion, deems proper, taking into consideration their ability to pay for said maintenance . . ."

There is no doubt that, so far as future maintenance is concerned, an order can be made only upon strict compliance with section 4, 71 PS §1784, and that, in proceedings under that section, no order may be made for past maintenance: Keller v. Commonwealth, 71 Pa. 413; In the Matter of Lucy Jones, 96 Pa. Superior Ct. 480; Commonwealth ex rel. v. Herman, 97 Pa. Superior Ct. 453; In re Proceedings against Forcey, 99 Pa. Superior Ct. 293.

It has been held, however, that section 3 of the Act of 1915, 71 PS §1783, creates a statutory obligation on the part of the named relatives to reimburse the Commonwealth and that this obligation now is a quasi-contractual one (Erny's Estate, 337 Pa. 542, 545) and can be enforced as any other quasi-contract action. While the words in section 3, "as hereinafter provided", might at first sight seem to imply that liability must first be established under section 4 of the act, it has been authoritatively interpreted otherwise, so that there is presently no question of its meaning: Harnish's Estate, 268 Pa. 128, 131; Geisler's Estate, 76 Pa. Superior Ct. 560, 562.

Since the liability is one that did not exist at common law, is not a primary obligation but in the nature of a suretyship, and is one created by statute, the act must be strictly construed: Boles' Estate, 316 Pa. 179, 182; Erny's Estate, supra. Under section 3 of the Act of 1915, two conditions must be fulfilled before liability attaches, viz, a named relationship to the indigent person and that the person is legally able to pay: Commonwealth v. Adams, 77 Pitts. 128; Commonwealth v. Allison, 11 D. & C. 18, 19. There is one case (In re Brenneman, 17 D. & C. 449, 450) in which legal ability to pay is defined

as "not under legal disability". We cannot agree with this conclusion and note that in that case the court found that defendant, relative of an indigent insane person, had net assets of $5,000, that the claim was for only $61.43 and that liability for future maintenance had ceased.

We believe that in the phrase "legally able so to do [to pay]" the word "legally" means "according to the applicable law" and that the applicable law is the condition in section 4 that an order shall be made on relatives, "taking into consideration their ability to pay for said maintenance" and that the word "able" means "financially able". Only by this construction can any value be given to the words "as hereinafter provided", which words (under Harnish's Estate, supra) have been held not to apply to the later procedural provisions. The language would be clumsy and useless for the construction in In re Brenneman, supra. It is a condition which would not likely have come to the legislature's attention, whereas the presence or absence of financial ability would have moved them. Furthermore, orders of support are frequently made out of the estates of persons under a disability when there is a liability for support and a surplus income above the needs of the incompetent person. The guardian of a wealthy incompetent would undoubtedly be compelled to contribute to the support of his dependents, if there were a margin of income available.

The Commonwealth urges upon us a line of cases which have ordered payment from the relatives of indigent insane, apparently without consideration of ability to pay: Harnish's Estate, supra; Erny's Estate, supra; Boles' Estate, supra; Geisler's Estate, supra. All these cases concerned decedents' estates and in several of them the court declared that the estate was either "ample" or "sufficient", although in others the claim of the Commonwealth practically exhausted the estate. An analysis of these cases, however, indicates that none of them may be cited as authority for the proposition that financial abil-

ity does not enter into consideration upon suit for past maintenance.

Several cases not herein cited were concerned with the apparent priority given the Commonwealth or other municipalities under sections 6 and 7 of the Act of 1915, 71 PS §§1786-87, but this question was definitely settled against the Commonwealth in Metcalf's Estate, 319 Pa. 28, which held that since section 13 of the Fiduciaries Act of June 7, 1917, P. L. 447, provided a distribution of estates conflicting with that of the Act of 1915 now under consideration, the sections of the Act of 1915 affording the Commonwealth a priority were repealed by the repealing clause of the Fiduciaries Act.

Since the Commonwealth's claim is now deferred to all others, it follows that payment under the Act of 1915 in the orphans' court cannot interfere with decedent, who is, of course, dead, nor with his creditors, who are all preferred, and that the only persons affected are the heirs. They are volunteers and are not to be given a preference in an estate so long as any obligations of the ancestor are unfulfilled, although even they can insist upon enforcement of the indigent person's primary liability, even to the prejudice of the State's claim for future maintenance: Boles' Estate, supra. So the only time the orphans' court deals with liability under the Act of 1915 is when the relative charged has no further needs and has all debts paid. Clearly, then, the fact that decedent is "legally able to pay" is conclusively determined. The purpose of the condition that a relative shall be "legally able to pay" is that the act shall do justice to the Commonwealth, but shall not work oppression and that there is no virtue in pauperizing the relative in relief of one already indigent.

So long as a person is living, his ability to pay is dependent upon a number of considerations. We have found only one case (Spangler's Estate, 11 D. & C. 79) where a living relative's capital assets were taken under the Act of 1915, and the report of that case indicates that the court simply approved a voluntary settlement and the

question of legal ability was not fairly raised and we have no information concerning the relative's financial responsibility otherwise. We do not say that capital assets may not be charged in the hands of a living person, but simply hold that their possession is not conclusive of a person's ability to pay: Commonwealth v. Adams, supra; Commonwealth v. Allison, supra. In this case we have no averment whatever that defendant has any assets, income, or source of support whatsoever. The distinction between past or future maintenance may be important, so far as the remedy for enforcement is concerned, but we are convinced that in either case there is no enforcible obligation unless the person sought to be charged is, in the discretion of the court, financially able to make such compensation, without incurring undue personal privation.

Now, March 3, 1941, defendant's affidavit of defense raising questions of law is sustained and plaintiff is granted permission to file a supplementary statement of claim in accordance with this opinion, within 15 days after service of this order upon its counsel.