## Indiana County Petition.

## Hinks Appeal.

Argued September 28, 1948.   Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*James R. Graham*, with him *John S. Simpson, Fisher,
Ruddock & Simpson* and *Graham, Yost, Meyers &
Graham*, for appellant.

*Thomas S. Barbor*, with him *Miller & Gessler*, for
appellees.

OPINION BY MR. JUSTICE HORACE STERN, November
8, 1948:

The County Commissioners of Indiana County,
having bought a certain mining property at a treasurer's
sale for nonpayment of taxes, are desirous of selling
the same to a person who has made an advantageous
offer to purchase it.  An assignee of the previous owner,
however, claims the right to redeem the property for
the amount of the taxes, penalties, interest and costs
due thereon, the total of which is a considerably less

amount than that offered by the prospective purchaser. The question now is whether this claimed right of redemption exists and whether the Commissioners, therefore, are bound to recognize it.

The property was owned by Westmoreland Mining Company, but no mining operations have been conducted thereon since 1927. In 1940 it was sold by the County Treasurer at a tax sale for the nonpayment of the 1937 taxes, and it was purchased by the County Commissioners. In 1947 one Hinks, after certain intermediate court proceedings at which competitive bids had been received, offered to buy the property from the Commissioners for $25,290.82. Meanwhile certain parties— James A. Meehan and Walter J. Lyda—had obtained from Westmoreland Mining Company a quitclaim deed whereupon they asserted a right to redeem the property upon the payment of $20,290.82, that sum representing the total amount of taxes, interest, penalties and costs then due thereon. On petition of the Commissioners the court granted a rule on them to show cause why their offer to redeem should not be refused and why the property should not be sold to Hinks. The court, after hearing, discharged the rule, refused to approve the sale to Hinks, and directed that Meehan and Lyda should be allowed to redeem. Hinks, who had intervened in the proceedings, appeals from the court's decree.

The problem involved centers around the effect on the Act of July 28, 1941, P. L. 535—under which Meehan and Lyda claim—of the passage of the subsequent Act of May 24, 1945, P. L. 945. Hinks contends that this later statute repealed the Act of 1941 and that the period of redemption allowed to an owner of land sold for nonpayment of taxes had, in this case, expired long before 1947. An analysis of the legislation on the subject of redemption gives no support to this contention. Under the Acts of May 9, 1889, P. L. 141 and May 29, 1931, P. L. 280, the time allowed for redemption was fixed at two years after the sale for unpaid taxes. By the Act

of July 19, 1935, P. L. 1321, amending the Act of 1931, the time was extended to five years where the property was purchased by the County Commissioners, but by the Act of June 20, 1939, P. L. 498, which further amended the Act of 1931, this special provision was eliminated except as to land *theretofore* purchased by the Commissioners, and the time for redemption was restored in *all* cases to the period of two years after the tax sale. Then came the Act, here in question, of July 28, 1941, P. L. 535. It did not change the general two year redemption period, but it provided that, if the property was purchased at the tax sale by any political subdivision, any person entitled to redeem the property should have the right to do so as long as the title thereto remained in such political subdivision, whether or not the [two year] period, during which the right of redemption existed, should have expired: see *Blythe Township School District v. Mary-D. Coal Mining Co., Inc.,* 354 Pa. 407, 410, 47 A. 2d 535, 537; *Roth Appeal,* 159 Pa. Superior Ct. 145, 148, 47 A. 2d 716, 718. The effect, therefore, of this Act was that the right of redemption continued for two years after the tax sale whether or not the property was purchased by a political subdivision and during that time the property could not be sold, but, even after such period had expired, the right of redemption still remained, if a political subdivision had purchased the property, until the political subdivision actually sold the property. The Act of May 24, 1945, P. L. 945, was an additional amendment to the Act of 1931; it did not refer to the Act of 1941 at all; it retained the normal two year period for redemption and provided merely for certain additional payments to be made on redemption to cover moneys expended by the county, if any, in the demolition of unsafe buildings on the property. It would seem clear that when there is applied to these successive acts the well established canons of statutory construction it cannot validly be maintained that the Act of 1941 was repealed by the Act

of 1945. When a statute re-enacts the provisions of an earlier one it is to be read as part of the earlier statute, and not of the re-enacting one, if it is in conflict with another passed after the first but before the last act; therefore, it does not repeal by implication the intermediate one, but the intermediate act will be deemed to remain in force and to qualify or modify the new act in the same manner as it did the first: *Toner's Estate*, 260 Pa. 49, 57, 103 A. 541, 544; *Commonwealth v. Provident Trust Co.*, 287 Pa. 251, 257, 134 A. 377, 378; *Commonwealth v. Meyers*, 290 Pa. 573, 584, 585, 139 A. 374, 378; *Ferguson's Estate*, 325 Pa. 34, 36, 37, 189 A. 289, 290; cf. Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 83. Thus the Act of 1945, continuing the two year redemption period of the Act of 1931, as amended, did not affect the provisions of the Act of 1941, which, while also retaining the basic two year period, had merely given an added special privilege of redemption in cases where a political subdivision retained title to the property after the ordinary redemption period had expired. Of course, if the Act of 1945 and the intermediate Act of 1941 were wholly inconsistent with each other, the Act of 1941 would necessarily have to be regarded as repealed: *Metcalf's Estate*, 319 Pa. 28, 32, 179 A. 587, 588, but such is not the case, and the provisions of the Act of 1945 must therefore be considered as written into the original Act of 1931 as amended, leaving untouched the Act of 1941.*

The intervenor raises several other questions. He contends that Westmoreland Mining Company, by its failure to conduct mining operations on the property and to pay the taxes thereon over a long course of years, had abandoned its title. It has frequently been held

---

* The laws covering this entire subject have now been revised and consolidated in the Real Estate Tax Sale Law of July 7, 1947, P. L. 1368; that Act expressly repeals the Acts both of 1931 and 1941 in so far as they apply to taxing districts coming within the provisions of and operating under the 1947 Act.

that abandonment of title is not to be presumed from a mere failure to possess the land or from neglect to pay the taxes thereon; inchoate rights may be abandoned but abandonment is not predicable of perfect titles: *Mayor of Philadelphia v. Riddle,* 25 Pa. 259, 263; *Goodman v. Sanger,* 85 Pa. 37, 43; *Bear Valley Coal Co. v. Dewart,* 95 Pa. 72, 78; *Kreamer v. Voneida,* 213 Pa. 74, 80, 62 A. 518, 520; *Parks v. Pennsylvania Railroad Co.,* 301 Pa. 475, 480, 481, 152 A. 682, 684; *Graham & Co., Inc., v. Pennsylvania Turnpike Commission,* 347 Pa. 622, 635, 636, 33 A. 2d 22, 28, 29. It is also argued that Meehan and Lyda were not entitled to redeem the property because they did not become the owners by deed of conveyance until after the two year period of redemption had expired and at that time Westmoreland Mining Company had nothing to convey to them. It did have, however, a continuing right of redemption under the Act of 1941 and that was a real property right which could be assigned. It was said in *Gault's Appeal,* 33 Pa. 94, 98: "The sale left in the former owner an equity of redemption at the least, and that might be conveyed like any other estate, and the grantee took it with all the rights and capacities of the grantor. He is therefore the 'owner' who holds the title at the moment of redemption." So in *Philadelphia v. Schaefer,* 269 Pa. 550, 553, 112 A. 864, 865, it was said, quoting from previous authorities, that " 'Any right which, in law or equity, amounts to an ownership in the land, any right of entry upon it, to its possession or enjoyment, or any part of it, which can be deemed an estate in it, makes the party an owner, so far as it is necessary to give him the right to redeem'. . . . This equity of redemption could be conveyed, even subsequently to the tax sale, and the transferee could enforce it." And in *Philadelphia v. Unknown,* 30 Pa. Superior Ct. 516, 518, it was held that the right of the delinquent owner to redeem the premises was an interest in real estate and not a personal right which could not be assigned.

Finally, it is urged by the intervenor that, under the Act of 1941, Meehan and Lyda should have entered into a written agreement with the County Commissioners to pay the taxes in five equal annual instalments, instead of making one lump sum payment of the entire amount due. When it is considered that the Act of 1941 was intended for the benefit of hard-pressed property owners who might otherwise lose their lands through inability to pay the taxes thereon it is impossible to believe that the legislature could have intended to deny to such owners the right to regain their lands by a single payment in full instead of by payments in instalments; presumably the advantage to the political subdivision of getting the entire amount at once would more than counterbalance the possibility of the redeeming owner subsequently failing to pay the taxes falling due during the five year period.

The order and decree of the court is affirmed; the costs, however, to be paid by the appellees.