J-A08020-14
J-A08021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

EVELYN D. MCCULLOUGH-FRANTZ : IN THE SUPERIOR COURT OF
AND KENNETH M. FRANTZ, HER : PENNSYLVANIA
HUSBAND, :
:
APPELLANTS :
:
v. :
:
CONSOL PENNSYLVANIA COAL :
COMPANY, MAXINE FISCHER, :
SINGLE, ROBERT FISCHER AND :
DOREEN A. FISCHER, HIS WIFE, :
VERE GAFFNEY AND GLORIA I. :
GAFFNEY, HIS WIFE, KENNETH L. :
KIRTLEY AND ROBIN L. KIRTLEY, :
HIS WIFE, DAVID W. MCCULLOUGH:
AND FRANCES MCCULLOUGH, HIS :
WIFE, JOHN MCCULLOUGH AND :
SUE MCCULLOUGH, HIS WIFE, :
LAURA MILHAN, SINGLE, JEAN :
RODRIGUEZ, SINGLE, AND JUDGE :
BRUCE M. SNELL, JR., AND ANN :
SNELL, HIS WIFE :
:
v. :
:
CONSOL PENNSYLVANIA COAL :
COMPANY, BERNARD B. WALLACE :
AND CHALMERS S. WALLACE :
:
v. :
:
CONSOL PENNSYLVANIA COAL :
COMPANY, :
DONNA H. CIGANIK AND VINCENT :
P. CIGANIK, JR., HER HUSBAND, :
PATRICIA A. CLARK, WIDOW, :
DENISE DAVIDSON, SINGLE, RAY :
C. ELMER, SINGLE, DOREEN L. :
EUP, SINGLE, MRS. KENNETH :
GUTHRIE, WIDOW, MARGARET J. :

J-A08020-14
J-A08021-14

SWART IREY, SINGLE,                         :
NANCY IRWIN, SINGLE, DRAKE D.   :
LEITHOLD AND LISA JAYNE              :
LEITHOLD, HIS WIFE, JOSEPH          :
LEITHOLD AND RHONDA B.              :
LEITHOLD, HIS WIFE, ROBERT G.    :
MCCRACKEN AND PATRICIA M.       :
MCCRACKEN, HIS WIFE,                   :
ELIZABETH B. SWART MOATS AND  :
D.W. MOATS, HER HUSBAND,           :
RUTH ANN SWART PAGOS AND        :
DONALD L. PAGOS, HER                    :
HUSBAND, SHARON L. RAFTER        :
AND RICHARD M. RAFTER, HER       :
HUSBAND, LINDA ROSENLIEB           :
AND RICHARD ROSENLIEB, HER      :
HUSBAND, EUGENE SCHERICH        :
AND SUSAN SCHERICH, HIS WIFE, :
NEAL B. SCHOENIAN AND YVONNE :
M. SCHOENIAN, HIS WIFE, ELSIE    :
SHAW, SINGLE, JERRY L. SHAW,     :
SINGLE, LARRY SHAW AND JEAN     :
A. SHAW, HIS WIFE, RUTH M.          :
SHAW, WIDOW, JOHN R. SHAW         :
AND LINDA M. SHAW, HIS WIFE,      :
LOIS SINCLAIR AND JAMES W.        :
SINCLAIR, HER HUSBAND, KEITH     :
STIGLBAUER AND SALLY                  :
STIGLBAUER, HIS WIFE, WAYNE      :
STIGLBAUER, SINGLE, DUANE T.     :
SWART AND SHARON SWART, HIS   :
WIFE, JAMES H. SWART AND MARY :
LOU SWART, HIS WIFE, RALPH C.    :
SWART AND NANCY M. SWART,         :
HIS WIFE, WAYNE C. SWART AND     :
JOYCE E. SWART, HIS WIFE, BETH  :
T. VOLPP AND RICHARD M. VOLPP, :
HER HUSBAND, AND DAVID R.         :
WALKER, SINGLE                              :

J-A08020-14
J-A08021-14

|                                         |                                          |
|-----------------------------------------|------------------------------------------|
| v.                                      |                                          |
| CONSOL PENNSYLVANIA COAL COMPANY        | No. 1015 WDA 2013                        |

Appeal from the Order of May 21, 2013, in the Court
of Common Pleas of Greene County, Civil Division, at
No. A.D. No. 1086 of 2006.

|                                                                                                                                                                                                                                                                                                                                                                                                 |                                           |
|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------------------------------------------|
| EVELYN D. MCCULLOUGH-FRANTZ AND KENNETH M. FRANTZ, HER HUSBAND,                                                                                                                                                                                                                                                                                                                                  | IN THE SUPERIOR COURT OF PENNSYLVANIA     |
| APPELLANTS                                                                                                                                                                                                                                                                                                                                                                                       |                                           |
| v.                                                                                                                                                                                                                                                                                                                                                                                              |                                           |
| CONSOL PENNSYLVANIA COAL COMPANY, MAXINE FISCHER, SINGLE, ROBERT FISCHER AND DOREEN A. FISCHER, HIS WIFE, VERE GAFFNEY AND GLORIA I. GAFFNEY, HIS WIFE, KENNETH L. KIRTLEY AND ROBIN L. KIRTLEY, HIS WIFE, DAVID W. MCCULLOUGH AND FRANCES MCCULLOUGH, HIS WIFE, JOHN MCCULLOUGH AND SUE MCCULLOUGH, HIS WIFE, LAURA MILHAN, SINGLE, JEAN RODRIGUEZ, SINGLE, AND JUDGE BRUCE M. SNELL, JR., AND ANN SNELL, HIS WIFE |                                           |
| v.                                                                                                                                                                                                                                                                                                                                                                                              |                                           |
| CONSOL PENNSYLVANIA COAL COMPANY, BERNARD B. WALLACE AND CHALMERS S. WALLACE                                                                                                                                                                                                                                                                                                                     |                                           |
| v.                                                                                                                                                                                                                                                                                                                                                                                              |                                           |
| CONSOL PENNSYLVANIA COAL COMPANY,                                                                                                                                                                                                                                                                                                                                                                |                                           |

3

J-A08020-14
J-A08021-14

DONNA H. CIGANIK AND VINCENT : 
P. CIGANIK, JR., HER HUSBAND, : 
PATRICIA A. CLARK, WIDOW, : 
DENISE DAVIDSON, SINGLE, RAY : 
C. ELMER, SINGLE, DOREEN L. : 
EUP, SINGLE, MRS. KENNETH : 
GUTHRIE, WIDOW, MARGARET J. : 
SWART IREY, SINGLE, : 
NANCY IRWIN, SINGLE, DRAKE D. : 
LEITHOLD AND LISA JAYNE : 
LEITHOLD, HIS WIFE, JOSEPH : 
LEITHOLD AND RHONDA B. : 
LEITHOLD, HIS WIFE, ROBERT G. : 
MCCRACKEN AND PATRICIA M. : 
MCCRACKEN, HIS WIFE, : 
ELIZABETH B. SWART MOATS AND : 
D.W. MOATS, HER HUSBAND, : 
RUTH ANN SWART PAGOS AND : 
DONALD L. PAGOS, HER : 
HUSBAND, SHARON L. RAFTER : 
AND RICHARD M. RAFTER, HER : 
HUSBAND, LINDA ROSENLIEB : 
AND RICHARD ROSENLIEB, HER : 
HUSBAND, EUGENE SCHERICH : 
AND SUSAN SCHERICH, HIS WIFE, : 
NEAL B. SCHOENIAN AND YVONNE : 
M. SCHOENIAN, HIS WIFE, ELSIE : 
SHAW, SINGLE, JERRY L. SHAW, : 
SINGLE, LARRY SHAW AND JEAN : 
A. SHAW, HIS WIFE, RUTH M. : 
SHAW, WIDOW, JOHN R. SHAW : 
AND LINDA M. SHAW, HIS WIFE, : 
LOIS SINCLAIR AND JAMES W. : 
SINCLAIR, HER HUSBAND, KEITH : 
STIGLBAUER AND SALLY : 
STIGLBAUER, HIS WIFE, WAYNE : 
STIGLBAUER, SINGLE, DUANE T. : 
SWART AND SHARON SWART, HIS : 
WIFE, JAMES H. SWART AND MARY : 
LOU SWART, HIS WIFE, RALPH C. : 
SWART AND NANCY M. SWART, : 
HIS WIFE, WAYNE C. SWART AND : 
JOYCE E. SWART, HIS WIFE, BETH :

4

J-A08020-14
J-A08021-14

T. VOLPP AND RICHARD M. VOLPP, :
HER HUSBAND, AND DAVID R. :
WALKER, SINGLE :
:
:
:
APPEAL OF:  MAXINE FISCHER, :
SINGLE, ROBERT FISCHER AND :
DOREEN A. FISCHER, HIS WIFE, :
VERE GAFFNEY AND GLORIA I. :
GAFFNEY, HIS WIFE, KENNETH L. :
KIRTLEY AND ROBIN L. KIRTLEY, :
HIS WIFE, DAVID W. MCCULLOUGH:
AND FRANCES MCCULLOUGH, HIS :
WIFE, JOHN MCCULLOUGH AND :
SUE MCCULLOUGH, HIS WIFE, :
LAURA MILHAHN, SINGLE, JEAN :
RODRIGUEZ, SINGLE, AND JUDGE :
BRUCE M. SNELL, JR., AND ANN :
SNELL, HIS WIFE, BERNARD B. :
WALLACE AND CHALMERS S. :
WALLACE, HIS WIFE :
DONNA H. CIGANIK AND VINCENT :
P. CIGANIK, JR., HER HUSBAND, :
PATRICIA A. CLARK, WIDOW, :
DENISE DAVIDSON, SINGLE, RAY :
C. ELMER, SINGLE, DOREEN L. :
EUP, SINGLE, MRS. KENNETH :
GUTHRIE, WIDOW, MARGARET J. :
SWART IREY, SINGLE, :
NANCY IRWIN, SINGLE, DRAKE D. :
LEITHOLD AND LISA JAYNE :
LEITHOLD, HIS WIFE, JOSEPH :
LEITHOLD AND RHONDA B. :
LEITHOLD, HIS WIFE, ROBERT G. :
MCCRACKEN AND PATRICIA M. :
MCCRACKEN, HIS WIFE, :
ELIZABETH B. SWART MOATS AND :
D.W. MOATS, HER HUSBAND, :
RUTH ANN SWART PAGOS AND :
DONALD L. PAGOS, HER :
HUSBAND, SHARON L. RAFTER :
AND RICHARD M. RAFTER, HER :
HUSBAND, LINDA ROSENLIEB :

5

J-A08020-14
J-A08021-14

AND RICHARD ROSENLIEB, HER : 
HUSBAND, EUGENE SCHERICH : 
AND SUSAN SCHERICH, HIS WIFE, : 
NEAL B. SCHOENIAN AND YVONNE : 
M. SCHOENIAN, HIS WIFE, ELSIE : 
SHAW, SINGLE, JERRY L. SHAW, : 
SINGLE, LARRY SHAW AND JEAN : 
A. SHAW, HIS WIFE, RUTH M. : 
SHAW, WIDOW, JOHN R. SHAW : 
AND LINDA M. SHAW, HIS WIFE, : 
LOIS SINCLAIR AND JAMES W. : 
SINCLAIR, HER HUSBAND, KEITH : 
STIGLBAUER AND SALLY : 
STIGLBAUER, HIS WIFE, WAYNE : 
STIGLBAUER, SINGLE, DUANE T. : 
SWART AND SHARON SWART, HIS : 
WIFE, JAMES H. SWART AND MARY : 
LOU SWART, HIS WIFE, RALPH C. : 
SWART AND NANCY M. SWART, : 
HIS WIFE, WAYNE C. SWART AND : 
JOYCE E. SWART, HIS WIFE, BETH : 
T. VOLPP AND RICHARD M. VOLPP, : 
HER HUSBAND, AND DAVID R. : 
WALKER, SINGLE :      No. 1045 WDA 2013


Appeal from the Order of May 21, 2013, in the Court
of Common Pleas of Greene County, Civil Division, at
No. A.D. No. 1086 of 2006.

BEFORE:  ALLEN, OLSON AND WECHT, JJ.

MEMORANDUM BY OLSON, J.:          **FILED AUGUST 6, 2014**

In these four consolidated appeals, Appellants, Evelyn D. McCullough-Frantz, *et al.* (hereinafter "the Frantzes"), Maxine Fischer, *et al.* (hereinafter "the Fischers"), Bernard B. Wallace, *et al.* (hereinafter "the Wallaces"), and Donna H. Ciganik, *et al.* (hereinafter "the Ciganiks"), appeal from the orders entered on May 21, 2013, granting the motions for summary judgment filed

6

on behalf of Appellee Consol Pennsylvania Coal Company (hereinafter "Consol") and denying all of Appellants' motions for summary judgment. We affirm.[1]

In 2006, the Frantzes, the Fischers, the Wallaces, and the Ciganiks instituted their current lawsuits by filing separate, but similar, complaints against Consol. Within all of Appellants' complaints, Appellants claimed that they are the heirs to the last valid record owners of coal rights in certain Greene County, Pennsylvania, properties. **See**, **e.g.**, The Ciganiks' Complaint, 6/15/07, at ¶ 34; The Frantzes' Complaint, 5/8/07, at ¶¶ 5-8. According to Appellants, as the heirs, they are the true owners of the coal, the coal mining rights, and the rights of support in "the Pittsburgh or River Vein of coal" underlying the subject properties. Yet, according to Appellants, Consol has been (and continues to) tortiously mine coal from the properties that Appellants rightfully own. **See**, **e.g.**, The Ciganiks' Complaint, 6/15/07, at ¶ 35; The Frantzes' Complaint, 5/8/07, at ¶ 10. Based upon these averments, Appellants asserted trespass, conversion, and unjust enrichment claims against Consol, wherein Appellants sought monetary relief from

---

[1] We note that the Frantzes filed their appeal (and their appellate brief) at 1015 WDA 2013 and the Ciganiks, Fischers, and Wallaces filed their consolidated appeal (and their separate, consolidated appellate brief) at 1045 WDA 2013. For purposes of disposition, we have *sua sponte* consolidated the appeals at 1015 WDA 2013 and 1045 WDA 2013.

Consol.[2]  *See*, *e.g.*, The Ciganiks' Complaint, 6/15/07, at ¶¶ 39-49; The Frantzes' Complaint, 5/8/07, at ¶¶ 14-26.

Consol answered the individual complaints and admitted that it was mining coal from the subject properties.  However, Consol denied that Appellants had any property rights in any of the subject properties.  Indeed, within Consol's new matter, Consol claimed that Appellants' ancestors were divested of ownership over the subject properties in the 1930's and 1940's – when Appellants' ancestors failed to pay taxes on the lands and, as a result, the properties were sold at Greene County Treasurer's sales.  *See*, *e.g.*, Consol's Answer and New Matter, to Ciganiks' Complaint, 10/31/07, at ¶ 52.

Specifically, these Treasurer's sales took place:  in 1932 (for the property the Ciganiks were claiming); in 1933 (for the property the Wallaces were claiming); and, in 1941 (for the property the Fischers and the Frantzes were claiming).  In each case, the Treasurer's sale resulted in the property being sold to the Greene County Commissioners and, in each case, the Treasurer's sale was confirmed absolutely.  *See* Greene County Treasurer's Report and Return, 12/5/1932; Greene County Treasurer's Report and Return, 12/4/1933; Greene County Treasurer's Report and Return, 12/1/1941.  Moreover, in each case, the Greene County Commissioners sold

---

[2] In their original complaints, all Appellants asserted a claim for ejectment against Consol.  However, Appellants later withdrew these ejectment claims and the operative complaints contain no claim for ejectment against Consol.

the property in 1945 to an unrelated third party. *See* Order, 10/20/1945, at 1 (approving the sale of all three of the subject parcels from the Greene County Commissioners to the unrelated third party and confirming the sale absolutely). Finally, in each case, following a chain of succession involving unrelated third parties, an unrelated entity purchased the property and then leased it to Consol. Thus, Consol claimed that the Treasurer's sales divested Appellants' ancestors – and therefore Appellants – of any and all rights in the subject properties.

As the Frantzes admit, "[a]t a final pretrial conference, the parties concluded that the issue of liability could be decided by cross-filed motions for summary judgment." The Frantzes' Brief at 5. Thus, following the close of discovery, the parties filed cross-motions for summary judgment. Within each of Appellants' summary judgment motions, Appellants claimed that they were the true owners of the coal, the coal mining rights, and the rights of support in the subject properties. Countering Consol's claim that the Treasurer's sales divested Appellants' ancestors of ownership in the subject properties, Appellants argued that all three Treasurer's sales were void for lack of notice. *See*, *e.g.*, The Ciganiks' Motion for Summary Judgment, 11/5/12, at 3. In support of their contention, Appellants pointed to record evidence tending to show that, at the time of the Treasurer's sales, each of the subject properties was assessed as "seated" land and each of the subject

9

properties was then sold, at Treasurer's sale, as seated land.[3]  **See** Greene County Treasurer's Report and Return, 12/5/1932; Greene County Treasurer's Report and Return, 12/4/1933; Greene County Treasurer's Report and Return, 12/1/1941.  Further, Appellants noted that the record evidence tended to show the following.

At the time of the 1932 Treasurer's sale, the property owned by the Ciganiks' ancestors was assessed in the name of "Isaac Supler."  Greene County Treasurer's Report and Return, 12/5/1932.  However, Isaac Supler died, testate, in 1896 and devised the subject property to Mary, James, Maria, and Nancy Supler – who are the Ciganiks' ancestors.  **See** Will of Isaac Supler, 9/1/1896, at 1-2.  Therefore, at the time of the 1932 Treasurer's sale, the property was assessed in the name of a prior owner.

At the time of the 1933 Treasurer's sale, the property owned by the Wallaces' ancestors was assessed in the name of "W.H. Sweet, *et al.*"  Greene County Treasurer's Report and Return, 12/4/1933.  However, "the property was not [only] owned [] by W.H. Sweet, [but it was also owned by other individuals], including [the Wallaces'] predecessor, Bernard Blair Wallace."  Therefore, at the time of the 1933 Treasurer's sale, the property was improperly assessed.

---

[3] For a discussion of the definition of seated land and the relevance of the distinction between seated and unseated land in this case, **see supra** at **16-17.

10

At the time of the 1941 Treasurer's sale, the property owned by the Fischers' and the Frantzes' ancestors was assessed in the name of "the George E. McCullough Estate." Greene County Treasurer's Report and Return, 12/1/1941. However, George E. McCullough died, testate, in 1903 and devised the subject property to Randolph and David. R. McCullough – who are the Fischers' and the Frantzes' ancestors. Therefore, at the time of the 1941 Treasurer's sale, the property was assessed in the wrong name.

Based solely upon the averment that the subject properties were incorrectly assessed, Appellants declared that "notice of the [Treasurer's] sale[s] could not have been given to the proper owners." ***See***, ***e.g.***, The Ciganiks' Motion for Summary Judgment, 11/5/12, at 3. Therefore, Appellants claimed, the Treasurer's sales – and the resulting Treasurer's deeds – were void for lack of notice. ***See***, ***e.g.***, ***id.*** Appellants claimed that they are thus the heirs to the last valid record holders of the properties and that they are the owners of the coal, the coal mining rights, and the rights of support in the subject properties. As such, Appellants claimed that they were entitled to summary judgment in their favor on their claims.

Within Consol's consolidated motion for summary judgment, Consol claimed that it was entitled to summary judgment against Appellants on a variety of bases, including: Appellants produced no evidence that would show that the Greene County Treasurer failed to give Appellants' alleged ancestors proper notice under the then-operative Act of May 29, 1931, P.L.

11

280, *as amended*, 72 P.S. § 5971a, *et seq.*; Appellants' claims are barred by the five-year limitation period relating to the redemption of seated land following a tax sale and the 21-year statute of limitation for actions to recover real property;[4] Appellants do not have standing to sue, as they do not have any property rights in the subject property; and, Appellants' claims are barred by the equitable doctrine of laches. Consol's Consolidated Motion for Summary Judgment, 3/4/13, at 1-4.

Moreover, Consol's summary judgment motion challenged Appellants to come forward with evidence that would show that Appellants or Appellants' alleged ancestors had paid taxes on any of the properties immediately prior to or at any time after the Treasurer's sales took place. *Id.* at 3. Appellants did not come forward with any such evidence. **See** The Frantzes' Response to Consol's Motion for Summary Judgment, 5/28/13, at ¶ 9.

---

[4] We note that, in **Poffenberger v. Goldstein**, the Commonwealth Court held that the catch-all six-year statute of limitations, found in 42 Pa.C.S.A. § 5527(b), was applicable in an action to set aside a 1985 tax sale for deficient notice – and that the statute of limitations began to run on the date of the tax sale. **Poffenberger v. Goldstein**, 776 A.2d 1037, 1041-1042 (Pa. Cmwlth. 2001). Although the catch-all six-year statute of limitations provision took effect on June 27, 1978, the limitations period would have clearly expired by the time Appellants instituted their current actions. Nevertheless, Consol did not move for summary judgment upon the catch-all six-year statute of limitations provision. Therefore, we will not consider whether **Poffenberger** is persuasive authority or whether the catch-all provision entitled Consol to summary judgment in these cases.

Consol's brief in support of its summary judgment motion expounded upon the above-summarized claims. Further, within Consol's brief, Consol argued that "the mineral rights at issue in these consolidated cases, although assessed as seated lands, should legally be considered to be unseated land[s]" – and that the notice requirements for the Treasurer's sale of unseated lands were unquestionably satisfied in all of the cases. Consol's Consolidated Brief in Support of Summary Judgment Motion, 3/4/13, at 17.

On May 21, 2013, the trial court entered an order granting Consol's consolidated motion for summary judgment and denying Appellants' motions for summary judgment. The May 21, 2013 order further declared that the basis for the ruling was that "[t]he land in question was unseated land, which was inadvertently listed as seated land," and that the Treasurer's sales complied with the notice requirements for unseated land. Trial Court Order, 5/21/13, at ¶ 1. Further, the trial court held that, even if the properties were actually seated lands, "[a]ll requirements of notice were complied with at the necessary time, rendering the tax sale[s] valid." *Id.* at ¶ 2. Therefore, the trial court concluded that all of Appellants' claims failed and that Consol was entitled to judgment as a matter of law.

Appellants filed timely notices of appeal from the trial court's orders and the two sets of appellants[5] now raise the following claims:[6]

---

[5] As noted above, the Frantzes filed their appeal (and their appellate brief) at 1015 WDA 2013 and the Ciganiks, Fischers, and Wallaces filed their

1. Can the trial court conclude [that] the land[s] subject to this litigation [were] "unseated lands" even though the only evidence of record is the Tax Sale "report and return of sale" which indicates the subject lands are "seated lands?"

2. If the subject lands are assessed as seated lands, but are in fact unseated lands, is the proper tax sale procedure established for seated lands?

3. Was improper assessment and lack of notice provided to the actual owners of the subject lands a defect that would invalidate the Tax Sales?

The Ciganiks', Fischers', and Wallaces' Brief at 4.

1. Whether the property must be considered "seated," as assessed, requiring the taxing authorities to follow the tax sale procedures for seated land pursuant to the Act of May 29, 1931, P.L. 280, No. 132, Section 7, including providing constitutionally adequate notice of the sales to the true owners of the properties?

2. Whether the notice of the tax sales attempted by the taxing authorities was constitutionally adequate to provide the true owners with due process of law before being deprived of property when the property was assessed in the wrong name and when no notice to the true owners was attempted?

The Frantzes' Brief at 4.

_____

consolidated appeal (and their separate, consolidated appellate brief) at 1045 WDA 2013.

[6] The trial court ordered Appellants to file concise statements of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellants complied with the trial court's orders and, within Appellants' various Rule 1925(b) statements, Appellants listed the claims they currently raise on appeal.

In the case at bar, the trial court granted Consol's consolidated motion for summary judgment and denied Appellants' motions for summary judgment. We note:

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.
>
> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

***Englert v. Fazio Mech. Serv.'s, Inc.***, 932 A.2d 122, 124 (Pa. Super. 2007) (internal citations omitted).

Further, "[w]here the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." ***Gubbiotti v. Santey***, 52 A.3d 272, 273 (Pa. Super. 2012) (internal quotations and citations omitted).

On appeal, all Appellants claim that the trial court erred in concluding that, at the time of the Treasurer's sales, the properties constituted

15

"unseated" lands. According to Appellants, the only evidence of record is that, at the time of the sales, the properties constituted "seated" lands. The Ciganiks', Fischers', and Wallaces' Brief at 10; The Frantzes' Brief at 9. We agree that the trial court erred when it granted summary judgment upon the basis that the properties constituted unseated lands. Nevertheless, we conclude that the trial court properly entered summary judgment in favor of Consol and against Appellants in this case, as Appellants have neither averred nor alleged that the Greene County Treasurer failed to provide Appellants' ancestors with the requisite notice of the Treasurer's sales. *See ALCO Parking Corp. v. Public Parking Auth. of Pgh.*, 706 A.2d 343, 349 (Pa. Super. 1998) ("[t]he order of a trial court may be affirmed on appeal if it is correct on any legal ground or theory, regardless of the reason or theory adopted by the trial court") (internal quotations and citations omitted). Therefore, we affirm the trial court's orders in this case.

In the 1930's and 1940's, there existed two separate statutory systems for selling land to recoup delinquent taxes: one system existed where the land was seated and one system existed where the land was unseated. Our Supreme Court has explained the differences between seated and unseated lands:

> [W]hether a tract of land is seated or unseated depends altogether upon what has been, or is being done upon it; upon the appearance which it may present to the eye of the assessor. . . . [T]he assessor has nothing to do with the misapprehensions or mistakes of the occupant; it is his

16

> business to return the land as seated if he finds upon it such permanent improvements as indicate a personal responsibility for its taxes. On the other hand, if there be no such improvements he must return it as unseated. Neither is [it] the business of the assessor to inquire how the improver holds the property . . . for the question is but how the taxes shall be collected: if seated, then from some person; but if unseated, from the land itself.

***Bannard v. N.Y. State Natural Gas Corp.***, 293 A.2d 41, 50 (Pa. 1972), *quoting* **Stoetzel v. Jackson**, 15 W.N.C. 260 (Pa. 1884); ***see also*** **Lackawanna Iron Co. v. Fales**, 55 Pa. 90 (Pa. 1867) ("When a family has not resided on the land, or profits have never been received from it, [the land] will undoubtedly be considered as unseated. There are two modes in which wild, uncultivated land may be made to assume the character of seated tracts. One, where a family has resided on the tract; and two, where profits are drawn from the land, although no family resides on it. In other words residence, without cultivation, or cultivation without residence or both, constitutes that species of property which may be properly denominated as seated.").

Simply stated, there is absolutely no evidence that the land in question was unseated at the time of the Treasurer's sales. To be sure, the only record evidence on this issue is that which is contained in the Greene County Treasurer's reports and returns – and all of the Greene County Treasurer's reports and returns declare that the subject parcels of property were assessed as seated lands and that the parcels of property were then sold, at

17

Treasurer's sales, as seated lands. *See* Greene County Treasurer's Report and Return, 12/5/1932; Greene County Treasurer's Report and Return, 12/4/1933; Greene County Treasurer's Report and Return, 12/1/1941. Therefore, viewing the evidence in the light most favorable to Appellants, we conclude that the trial court erred in concluding that "[t]he land in question was unseated land, which was inadvertently listed as seated land."[7] Trial Court Order, 5/21/13, at 1-2.

However, we conclude that the trial court did not err in granting Consol's consolidated motion for summary judgment, as Appellants have failed to aver or allege that the Greene County Treasurer did not give the then-owners notice of the Treasurer's sales.

---

[7] Within Consol's brief to this Court, Consol argues that it "clearly raised th[e claim that the lands in question were actually unseated lands] in support of its [m]otion for [s]ummary [j]udgment." Consol's Brief at 13. According to Consol, summary judgment was proper because Appellants failed to come forward with evidence that would create a genuine issue of material fact on this issue. *Id.* This argument immediately fails, as Consol did not raise its "unseated lands" claim in its motion for summary judgment. Instead, Consol first raised the argument in its brief in support of its motion for summary judgment. Thus, since Consol did not "move" for summary judgment on the basis that the lands were actually unseated, Appellants were not required to respond to Consol's unraised contention.

Further, and regardless, at the summary judgment stage, we are required to view the evidence in the light most favorable to the nonmoving party. Therefore, even if Consol properly raised the claim that the lands in question were, actually, unseated, there would still exist a genuine issue of material fact on the issue, as the Greene County Treasurer's reports and returns all declare that the subject lands were "seated." Because of this, there exists a genuine issue of material fact as to whether the lands were, in fact, seated or unseated.

18

In the case at bar, all of Appellants' claims are dependent upon this Court concluding that the 1932, 1933, and 1941 Treasurer's sales are void for lack of notice. We note that, at all relevant times, the law has provided that – after a Treasurer's sale for seated land has been confirmed absolutely and the period of redemption has ended – "good and valid title" to the property passes to the purchaser. Act of May 29, 1931, P.L. 280, § 12, *as amended*, Act of June 20, 1939, P.L. 498, § 7, *as amended*, 72 P.S. § 5971*l*. With the exception of a minor amendment that took effect in 1939, Section 12 of the 1931 Seated Tax Sale Act was essentially identical throughout the three Treasurer's sales that are the subject of this appeal. In relevant part, Section 12 provided:

> If no objections or exceptions are filed [to the Treasurer's sale] or where objections or exceptions are finally overruled and the sale confirmed absolutely, the validity of the assessment of the tax and its return for nonpayment, and the validity of the proceedings of the treasurer with respect to such sale shall not thereafter be inquired into judicially, in equity or by civil proceedings, by the person or persons in whose name such property was sold, his or her or their heirs, or his, her or their grantees or assigns, subsequent to the date of the assessment of the taxes for which such sale was made; and such sale, after the period of redemption shall be terminated, shall be deemed to pass a good and valid title to the purchaser as against the person or persons in whose name such property was sold; provided, the purchaser has filed the bond for surplus moneys as hereinafter provided.

Act of May 29, 1931, P.L. 280, § 12, *as amended*, Act of June 20, 1939, P.L.

498, § 7, *as amended*, 72 P.S. § 5971*l*.[8]

In the cases at bar, all three Treasurer's sales were confirmed

absolutely and the prior owners' rights of redemption expired, at the latest,

in 1945 – when the Greene County Commissioners sold the property to an

unrelated third party.[9]  Therefore, looking solely at the above statute, it

---

[8] The above-quoted statute was the law as it existed during the 1932 and 1933 Treasurer's sales.  In 1939, the legislature amended the last clause of the section, by deleting the phrase "as against the person or persons in whose name such property was sold" and adding, in its place, the phrase "free from any liens or encumbrances whatsoever, except such liens as are hereinbefore specifically saved."  72 P.S. § 5971*l* note.  The 1939 amendment also added a provision that the title was "in all respects as good and effective as if acquired by a sheriff's deed." ***Id.***

[9] As our Supreme Court has explained:

> Under the Acts of May 9, 1889, P.L. 141, 72 P.S. § 6113, and May 29, 1931, P.L. 280, 72 P.S. § 5971a *et seq.*, the time allowed for redemption was fixed at two years after the sale for unpaid taxes.  By the Act of July 19, 1935, P.L. 1321, amending the Act of 1931, the time was extended to five years where the property was purchased by the County Commissioners, but by the Act of June 20, 1939, P.L. 498, which further amended the Act of 1931, this special provision was eliminated except as to land *theretofore* purchased by the Commissioners, and the time for redemption was resorted in *all* cases to the period of two years after the tax sale.  Then came the Act . . . of July 28, 1941, P.L. 535.  It did not change the general two year redemption period, but it provided that, if the property was purchased at the tax sale by any political subdivision, any person entitled to redeem the property should have the right to do so as long as the title thereto remained in such political subdivision, whether or not the [two year] period, during which the right of redemption existed, should have

20

appears as though, in each case, "good and valid" title passed to the unrelated third party in 1945. Since Consol's property interest in each case traces back to the succession of deeds that followed the Treasurer's sales, it also appears as though Consol has a "good and valid" interest in the three parcels and – conversely – that Appellants have no property interest in the lands whatsoever.

Nevertheless, at all relevant times, the law has provided that – where seated land was to be sold to recoup delinquent taxes – the county treasurer was required to mail notice of the sale to the owner or the terre tenant of the property.[10] With the exception of an amendment that took effect in

---

> expired. . . . The effect, therefore, of this [1941] Act was that the right of redemption continued for two years after the tax sale whether or not the property was purchased by a political subdivision and during that time the property could not be sold, but, even after such period had expired, the right of redemption still remained, if a political subdivision had purchased the property, until the political subdivision actually sold the property.

**Petition of Indiana County**, 62 A.2d 3, 4 (Pa. 1948).

In the case at bar, the Greene County Commissioners purchased all the subject parcels of property at Treasurer's sales that occurred in 1932, 1933, and 1941. The Greene County Commissioners then sold the three parcels in 1945 to an unrelated third party. Therefore, pursuant to the Act of July 28, 1941, P.L. 535, the prior owners' rights of redemption expired – at the latest – when the Commissioners sold the properties in 1945.

[10] As we have held, "[i]n Pennsylvania law[, a] terre-tenant is one who becomes the legal owner of a debtor's real estate after [a] lien ha[s] attached." **Blasi v. Alexander**, 171 A.2d 904, 907 (Pa. Super. 1961) (*en banc*).

21

1939, the notification requirement during all three Treasurer's sales was stated as follows:

> In addition to such advertisement [of the Treasurer's sale in the newspapers], at least ten days before any such [Treasurer's] sale, written notice thereof shall be served by the county treasurer, by registered mail, upon the owner of such land, and if the whereabouts of the owner is unknown, such notice shall be served by registered mail upon the terre tenant, if any.

Act of May 29, 1931, P.L. 280, § 7, *as amended*, Act of June 20, 1939, P.L. 498, § 3, *as amended*, 72 P.S. § 5971g.[11]

As our Supreme Court has held, the above statute exists to protect the "fundamental provision of both our state and federal constitutions that no person shall be deprived of property except by the law of the land or due process of law." **Hess v. Westerwick**, 76 A.2d 745, 748 (Pa. 1950). In particular, the statute prevents the state from taking one person's property

---

[11] The 1939 amendment added a provision to the end of the above-quoted statute. The added provision read: "Provided, however, That no such sale shall be prejudiced or defeated and no title to property sold at such sale shall be invalidated by proof that such written notice was not served by the treasurer, or that such notice was not received by the owner or terre tenant as herein provided." 72 P.S. § 5971g note. Yet, as our Supreme Court held, the 1939 amendment was unconstitutional to the extent that it purported to relieve the treasurer of his duty to serve written notice upon the owner or terre tenant. **Hess v. Westerwick**, 76 A.2d 745, 748 (Pa. 1950). The Supreme Court held that the 1939 amendment was constitutional only to the extent that it placed "the risk of mail miscarriage . . . on the delinquent taxpayer." **Id.**

and giving it to another without notice and the opportunity to be heard. *Id.*

The Supreme Court explained:

> In recognition of this right to notice it has been the settled practice in this state extending back for over a century and a half to give the property owner some reasonable notice that his property is to be sold by process of law whether it be by mortgage foreclosure, execution or for tax defaults. Had the legislature provided for no notice at all there is little doubt the act would have been invalid as offending these fundamental provisions of both state and federal constitutions.

*Id.*

In following, the **Hess** Court held that "[w]here . . . the requisite notice of sale required by [the Act of May 29, 1931, P.L. 280, *as amended*, 72 P.S. § 5971a, *et seq.*] has not been given to the owner in accordance with the act and [the owner] is without knowledge until after confirmation, the confirmation cannot cure the fundamental omission because of the 'due process' clauses of our state and federal constitutions." *Id.* at 749. Treasurer's sales that are conducted without proper notice are thus void. *Id.*

The Commonwealth Court has explained the shifting burdens of production and proof in actions where an individual files exceptions to the Treasurer's sale or a complaint in ejectment, wherein the individual seeks possession of property sold at the Treasurer's sale:

> [The Pennsylvania] Supreme Court has [held] that a presumption of the regularity of an official act, [(such as the giving of notice of a Treasurer's sale)], exists until the

> contrary appears. ***Hughes v. Chaplin***, 132 A.2d 200, 202 (Pa. 1957), *quoting* ***Beacom v. Robison***, 43 A.2d 640, 643 (Pa. Super. 1945). A property owner may create a contrary appearance and overcome this presumption by filing exceptions to the tax sale [or a complaint in ejectment], averring that the Law's notice provisions were not strictly followed. The burden then shifts to the Bureau or the purchaser to show that the Bureau strictly complied with the notice provisions of the Law.

***In re Upset Sale Tax Claim Bureau McKean County on September 10, 2007***, 965 A.2d 1244, 1247 (Pa. Cmwlth. 2009) (internal quotations omitted) (some internal citations omitted).

At the outset, we note that neither Appellants nor Appellants' ancestors filed exceptions to the Treasurer's sales or actions for ejectment. Instead, Appellants filed actions at law – and have asserted trespass, conversion, and unjust enrichment claims against the lessee on the subject properties. At the root of all of Appellants' claims are allegations that – because the subject properties were assessed in the names of prior owners at the time of the Treasurer's sales – "notice of the [Treasurer's] sale[s] could not have been given to the proper owners" and that the Treasurer's sales must be void. ***See***, ***e.g.***, The Ciganiks' Motion for Summary Judgment, 11/5/12, at 3. Yet, since Appellants' have filed actions at law, Appellants have failed to comport with the recognized methods of challenging the notice given for Treasurer's sales. ***See Battisti v. Tax Claim Bureau of Beaver County***, 76 A.3d 111, 114 (Pa. Cmwlth. 2013) ("a person challenging the notice of a tax sale has the right to file a petition

24

to set aside the tax sale or to file a complaint and proceed in equity") (internal quotations and corrections omitted).

Given that Appellants have filed actions at law, it is highly doubtful that the above-described "burden shift" – which would act to relieve Appellants of their burden of actually producing evidence that the Greene County Treasurer failed to provide their ancestors with notice of the Treasurer's sales – could even potentially apply to the case at bar. ***See***, ***e.g.***, ***In re Upset Sale Tax Claim Bureau McKean County on September 10, 2007***, 965 A.2d at 1247 ("A property owner may . . . overcome th[e] presumption [of the regularity of an official act] by filing exceptions to the tax sale [or a complaint in ejectment], averring that the Law's notice provisions were not strictly followed. The burden then shifts to the Bureau or the purchaser to show that the Bureau strictly complied with the notice provisions of the Law").

The above-described burden shift is somewhat sensible in the two recognized methods for challenging a Treasurer's sale: where the individual files exceptions to the tax sale or where the individual files an action in ejectment. This is because, in the former, if evidence of notice (or lack of notice) exists, the evidence would be in the possession of the bureau or county – who are parties to the proceedings – and, in the latter, the action is one in equity – which places an emphasis upon fairness and justice, as opposed to form and formalities.

25

On the other hand, in an action at law, the plaintiff bears the burden of production and persuasion as to every element of their case. Thus, in the case at bar, since Appellants are the plaintiffs in these trespass and conversion cases, it would appear that Appellants bore the burden of production and persuasion on issues such as: Appellants' ownership of the subject property; Consol's intrusion upon Appellants' property; and, Consol's interference with Appellants' property rights in the coal. As such, to sustain their burden of production and persuasion on any of these issues, Appellants would be required to come forward with evidence that the Greene County Treasurer did not provide their ancestors with the requisite notice of the Treasurer's sales – which Appellants have simply not done in this case.

Nevertheless, even if the above-described burden shift were potentially applicable to actions at law, we conclude that Appellants failed to satisfy their initial burden of "averring that the Law's notice provisions were not strictly followed." *In re Upset Sale Tax Claim Bureau McKean County on September 10, 2007*, 965 A.2d at 1247. Therefore, the trial court properly granted Consol's consolidated motion for summary judgment.

Appellants' theory of improper notice rests upon their claim that, at the time of the Treasurer's sales, the three properties were assessed in the names of the prior owners.[12] Based solely upon their contention that the

---

[12] Neither set of appellants have preserved any claim that the allegedly incorrect assessment, in and of itself, voided the Treasurer's sales.

properties were assessed in the names of the prior owners, Appellants **hypothesized** – in their motions for summary judgment – that "notice of the [Treasurer's] sale[s] could not have been given to the proper owners." *See*, *e.g.*, The Ciganiks' Motion for Summary Judgment, 11/5/12, at 3. In other words, Appellants **have not even alleged** (let alone established) that the Greene County Treasurer, in fact, failed in its duty to properly notify Appellants' ancestors of the Treasurer's sales – and there is absolutely no evidence that Appellants' ancestors were not properly notified. Instead, in this case, Appellants rely strictly upon suppositions and assumptions – Appellants request that this Court infer a lack of notice from the fact that the properties were assessed in the names of the prior owners. Appellants cannot prevail on summary judgment in this manner.

Under the law, for Appellants to sustain their initial burden of overcoming "the presumption of the regularity of an official act" – which, in the case at bar, is the presumption that the Greene County Treasurer provided the property owners with the requisite notice of the Treasurer's

---

Specifically, the Ciganiks', Fischers', and Wallaces' Brief does not raise the claim in the argument section and the Frantzes' Brief does not list the claim in its statement of questions involved. Thus, any such claim is waived. *See Pgh. Const. Co. v. Griffith*, 834 A.2d 572, 584 (Pa. Super. 2012) (issues not properly developed or argued in brief are waived); Pa.R.A.P. 2116(a); *Commonwealth v. Bryant*, 57 A.3d 191, 196 n.7 (Pa. Super. 2012) (claims not included in the statement of questions involved on appeal section are waived). Rather, throughout these proceedings and on appeal, Appellants have claimed that the allegedly incorrect assessment was material only insofar as it bore upon the issue of notice.

27

sales – Appellants were required to at least aver or allege that the Treasurer did not, in fact, "comply with [the] statutory notice provisions." ***Dolphin Serv. Corp. v. Montgomery County Tax Claim Bureau***, 557 A.2d 38, 39 (Pa. Cmwlth. 1989). Appellants have not done so. Instead, Appellants have simply **suggested** in their summary judgment motions that the notices were defective because the properties were assessed in the names of the prior owners. This is insufficient and Appellants have thus failed to sustain their initial burden in this case. As such, the trial court properly granted Consol's motions for summary judgment and properly denied Appellants' cross-motions for summary judgment.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/6/2014

28